**Daria A. SULLIVAN–WEAVER, Plaintiff,**

v.

**NEW YORK POWER AUTHORITY (NYPA), Sam Petrosi, Kelley Varas, and Lionel Banda, Defendants.**

**No. 00 CIV 4001 CLB.**

United States District Court, S.D. New York.

Sept. 18, 2000.

Robert DiNardo, Jacobowitz & Gubits, Walden, NY, for Plaintiff.

Stephen Tisman, Valerie D. Ringel, Shiff & Tisman, New York City, Eileen P. Flynn, Michael Oxman, New York City, for Defendants.

## MEMORANDUM & ORDER

BRIEANT, District Judge.

By two separate motions filed on August 21, 2000 in this federal question employment discrimination litigation, heard and fully submitted on September 15, 2000, Defendants move to dismiss Plaintiff's claims pursuant to Rule 12(b)(6).

Plaintiff, Daria Sullivan–Weaver, sues pursuant to the Civil Rights Act of 1994 and the Civil Rights Act of 1991, 42 U.S.C. § 2000e–3 *et seq.* ("Title VII"), and the New York State Executive Law § 296 *et seq.* ("New York State Human Rights Law") to remedy alleged acts of retaliatory employment discrimination by Defendants. Ms. Sullivan–Weaver alleges that Defendants retaliated against her because she opposed what she believed to be unlawful sexual harassment and sexual discrimination under Title VII and the New York State Human Rights Law, made a complaint to the management of New York Power Authority ("NYPA"), and requested an investigation by the NYPA. The Complaint seeks damages for retaliation. No separate claim is made alleging sexual discrimination.

Plaintiff has been employed by the NYPA at the Indian Point 3 Nuclear Power Plant ("IP3") in Buchanan, New York since October, 1990, and is presently so employed. She has held five different positions, all at IP3. Currently, Plaintiff is employed by the NYPA at IP3 as a Systems Engineering Technical Specialist. Defendant, NYPA, is a municipal corporation of the State of New York. Defendants Sam Petrosi, Kelley Varas and Lionel Banda are employees of the NYPA at IP3.

In February, 1998, Plaintiff was a Design and Analysis Secretary to Defendant Petrosi, the Design and Analysis Manager at IP3 and Plaintiff's immediate supervisor. Allegedly, he threatened Plaintiff with retaliatory conduct and a hostile work environment in the future if she refused to accept reassignment to another position in order to enable Mr. Petrosi to hire Defendant Kelley Varas, a woman with whom Plaintiff alleges Mr. Petrosi was romantically involved, to fill Ms. Sullivan–Weaver's position as his secretary. Ms. Sullivan–Weaver alleges that she reasonably and in good faith believed that these actions by

Mr. Petrosi constituted unlawful sexual harassment and sexual discrimination against Ms. Sullivan–Weaver, but she did resign and accepted another position with the same employer, under the supervision of defendant Banda. Plaintiff was transferred to the position of Engineering Financial Administrator (Complaint at ¶ 5), which was described as a "promotion." Ms. Varas became Mr. Petrosi's secretary, filling Ms. Sullivan–Weaver's former position.

Plaintiff expressed to Mr. Petrosi and to her co-workers that Mr. Petrosi's conduct constituted sexual harassment and sexual discrimination against her. Consequently, Ms. Sullivan–Weaver alleges, Defendants Petrosi and Varas initiated a campaign of "retaliation" against her.

Ms. Sullivan–Weaver then complained to NYPA Human Resources and senior management about this retaliation, which allegedly caused Defendants Petrosi and Varas to intensify their campaign. This retaliation allegedly included Mr. Petrosi making unspecified false accusations to Plaintiff's evaluating manager, Mr. Jay Gulati, and making further unspecified negative comments to others.

Thereafter, in April, 1997, Defendant Banda, the IP3 Engineering Support Manager and Ms. Sullivan–Weaver's immediate supervisor after her reassignment, allegedly began his own campaign of retaliation against Ms. Sullivan–Weaver because of her prior complaints against Defendants Petrosi and Varas. Defendant Banda allegedly advised Plaintiff that she would not be considered for a promotion, made intentional misstatements during Plaintiff's third quarter 1999 performance evaluation and made further false and damaging representations regarding Plaintiff's work performance.

On December 22, 1999, Defendant Banda transferred Plaintiff to her current position as Systems Engineering Technical Specialist, which Plaintiff claims is a position of less responsibility, adversely affecting her career opportunities. Allegedly defendant Banda mischaracterized Ms. Sullivan–Weaver's performance to his co-workers.[1]

Plaintiff alleges that as a result of these retaliatory events she suffered lost wages, benefits and other compensation, as well as missing promotions and promotional opportunities.

On February 8, 2000, Plaintiff filed charges with the EEOC claiming retaliation only. On February 23, 2000, the EEOC dismissed the charge finding that: "Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. . . ."

*Discussion*

Dismissal under Rule 12(b)(6) is appropriate only when "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Olkey v. Hyperion 1999 Term Trust, Inc.,* 98 F.3d 2, 9 (2d Cir.1996)(quoting *I. Meyer Pincus Assoc. v. Oppenheimer & Co.,* 936 F.2d 759, 762 (2d Cir.1991)).

The retaliation claim is founded on 42 U.S.C. § 2000e–3(a), which provides that: "It shall be an unlawful employment practice for an employer to discriminate against any of his employees ... because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." Unlawful employment practices include discrimination against any individual based on his "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). Plaintiff asserts that she was discriminated against by Defendants because she opposed sexual discrimination and sexual harassment.

1. Defendant Banda "vehemently denies the allegations against him," but for purposes of this motion directed to the face of the pleading they must be considered as true.

The practice which she opposed was the request by Petrosi that she accept reassignment to another position so that he could employ his alleged paramour.

In order to state a claim, Plaintiff must allege that: (1) she was engaged in protected activity; (2) her employer was aware of that activity; (3) she suffered an adverse employment action; and (4) there was a causal connection between the protected activity and the adverse employment action. See *Galdieri–Ambrosini v. National Realty & Dev. Corp.*, 136 F.3d 276, 292 (2d Cir.1998).

For purposes of this motion, our attention is directed solely to element (1): whether or not Plaintiff was retaliated against for engaging in a protected activity. The claimed "protected activity" here is opposition to discrimination based on sex, as prohibited by 42 U.S.C. §§ 2000e–2(a) and 2000e–3(a). The facts relied on do not constitute opposition to discrimination based on sex. Our Court of Appeals has held that there can be a cognizable Title VII claim based on gender discrimination only if the Plaintiff was prejudiced because of her status as a female. There is no cognizable discrimination simply because the supervisor "preferred his paramour." See *DeCintio v. Westchester Co. Med. Ctr.*, 807 F.2d 304, 308 (2d Cir.1986) *(DeCintio I)*, a case strikingly similar to the instant claim.

Plaintiff attempts to rely on her presumed good faith in making the Complaint. See *Harper v. Blockbuster Entertainment Corp.*, 139 F.3d 1385, 1389 (11th Cir.1998). Mere subjective good faith belief is insufficient, the belief must be reasonable and characterized by *objective* good faith. *Manoharan v. Columbia University College of Physicians & Surgeons*, 842 F.2d 590, 593 (2d Cir.1988). As pointed out in *DeCintio, supra,*

> The dispositive issue in this action is whether, under Title VII of the Civil Rights Act of 1964, *42 U.S.C. § 2000e* (1982), the phrase "discrimination on the basis of sex" encompasses disparate treatment premised not on one's gender,

but rather on a romantic relationship between an employer and a person preferentially hired. The meaning of "sex," for Title VII purposes, thereby would be expanded to include "sexual liaisons" and "sexual attractions." Such an overbroad definition is *wholly unwarranted.* (Emphasis added).

807 F.2d at 306.

Because the facts pleaded are insufficient to support a good faith, reasonable belief that Plaintiff's replacement by another woman with whom her supervisor allegedly had a romantic relationship constituted discrimination based on gender within the plain meaning of the statute and the *DiCintio* case, any retaliatory acts that she may have suffered as a result of that opposition were not in reaction to a "protected activity," and, therefore, not actionable under Title VII.

Defendants' motions to dismiss the Title VII claim in this action are granted. The remaining supplemental claim that Defendants' actions violated the New York State Human Rights Law is dismissed without prejudice.

The Clerk shall file a final judgment.

SO ORDERED.