**Charles VOELS, Plaintiff,**

v.

**State of NEW YORK; New York State Department of Social Services; New York State Department of Civil Service; New York State Department of Audit and Control, Defendants.**

**No. 99 Civ. 10146(LAK).**

United States District Court, S.D. New York.

Jan. 14, 2002.

Charles R. Voels, Plaintiff pro se.

Deborah Ferleger, Assistant Attorney General, Eliot Spitzer, Attorney General of the State of New York, New York City, for Defendants.

## MEMORANDUM OPINION

KAPLAN, District Judge.

Plaintiff Charles Voels brings this employment discrimination action pursuant to

Title VII of the Civil Rights Act of 1964, as amended, against his employer alleging that he was (1) denied a promotion because of his national origin and gender and in retaliation for complaints he made regarding his supervisor, (2) given an adverse employment evaluation in retaliation for those complaints, and (3) transferred in retaliation for having filed a discrimination claim with the New York State Division of Human Rights. The defendants, the State of New York, the New York State Department of Social Services,[1] the New York State Department of Civil Service, and the New York State Department of Audit and Control, have moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

In a Report and Recommendation dated August 7, 2001 (the "R & R"), Magistrate Judge James C. Francis recommended that this Court grant the defendants' motion and dismiss all of the plaintiff's claims because he found that Voels (1) failed to state a claim with respect to his gender discrimination claim; (2) failed to make out a *prima facie* case with respect to the employment evaluation and transfer claims; and (3) failed to satisfy the third stage of the *McDonnell Douglas* test with respect to the national origin and retaliatory failure to promote claims because he did not show that the defendants' proffered nondiscriminatory explanations for the adverse employment actions were a pretext

for discrimination. Plaintiff timely filed objections to the R & R, and the defendants urge this Court to adopt the R & R in its entirety. For the reasons set out more fully below, this Court adopts the R & R insofar as it recommends dismissal of Voels' gender discrimination, employment evaluation, and transfer claims. This Court, however, denies the motion as to Voels' failure to promote claims based on national origin and retaliation.

## I. Facts

Plaintiff Charles Voels is a white male born in Germany.[2] He first was employed by the State of New York in 1977 in a grade 14 position in the Department of Social Services ("DSS").[3] He was promoted to a grade 18 position within DSS in 1978. In 1979, he joined DSS's Electronic Data Processing Audit unit ("EDP").[4]

From 1983 to 1986, Voels worked under the supervision of Patrick McGuinness.[5] Voels alleges that during this time, McGuinness began giving a female employee, Evelyn Cruz, preferential treatment.[6] McGuinness became romantically involved with Cruz sometime in 1985 or 1986, and the two were married in 1987.[7] Voels first complained of the preferential treatment he perceived McGuinness was giving Cruz in 1984,[8] and he alleges that McGuinness began to harass him after he made this complaint.[9]

---

1. The Department of Social Services now is known as the Department of Family Assistance and consists of the Office of Temporary and Disability Assistance and the Office of Children and Family Services. *See* Answer, n. 1.

2. Deposition of Charles Voels at 50 ("Voels Dep.").

3. *Id.* at 11.

4. *Id.* at 13.

5. Affidavit of William Jones, Dec. 1, 2000, ¶ 9 ("Jones Aff.").

6. Affidavit of Charles Voels, February 13, 2001, ¶ 20 ("Voels Aff.").

7. Deposition of Evelyn Cruz at 14 ("Cruz Dep."); Affidavit of Patrick McGuinness, Nov. 27, 2000, ¶ 7 ("McGuinness Aff.").

8. Voels Dep. at 77.

9. Voels Aff. ¶ 20.

Voels' claim based on his allegedly adverse employment evaluation stems from a performance evaluation he received in 1985. An initial evaluation meeting took place between Voels and his superiors, McGuinness and Frank Fezza. Voels alleges that the meeting lasted five hours and that he was badgered by McGuinness.[10] At this meeting, Voels was told that his evaluation rating would be "effective but needs substantial improvement." The rating then was changed to "effective" before the evaluation became official, allegedly because Voels threatened to attach to the evaluation a list of complaints about McGuinness and the evaluation process.[11] McGuinness claims that he never meant to submit the "effective but needs substantial improvement" evaluation as the official evaluation, but that he used it as a scare tactic to underscore the need for Voels to improve his performance.[12]

In 1986, Voels was transferred to another division within EDP.[13] He alleges that this transfer was in retaliation for the conflict he had had with McGuinness over the performance evaluation.[14] The defendants counter that Voels was transferred due to his weak technical skills.[15]

In 1988, promotions to two vacant EDP Systems Auditor I positions were available. DSS complied a ranked list of employees eligible for the promotion. Employees were scored based on a training and experience examination and were ranked from most to least qualified. Civil Service Law § 61 permitted the department to select whom to promote from among the top three candidates who were available and willing to accept the position.[16] According to the defendants, the first five people on the 1988 list declined the promotion, making the sixth person the first eligible candidate.[17] He was passed over.[18] The seventh and eighth persons were unavailable.[19] The ninth person, Patricia Zashkoff, was given the first position.[20] The tenth, eleventh, and twelfth persons were unavailable to accept the second position.[21] Voels was the thirteenth person and was eligible for the promotion, but he was not selected.[22] The fourteenth, fifteenth, and sixteenth persons declined the position.[23] The seventeenth person, Nicholas DiDesiderio, who already held the position on a provisional basis,[24] received the promotion.[25] Defendants contend that his selection was proper because DiDesiderio was one of the top three candidates who was available and willing to accept the position.

Voels disputes the defendants' explanation of how DiDesiderio came to be included among the top three candidates.[26] He

10. *Id.* ¶ 32.

11. *Id.* ¶ 41.

12. McGuinness Aff. ¶¶ 12–14.

13. Jones Aff. ¶ 10.

14. Voels Aff. ¶ 47.

15. Jones Aff. ¶ 10; McGuinness Aff. at 16.

16. N.Y. CIV. SERV. L. § 61 (McKinney 2001).

17. Def. 56.1 St. ¶ 99.

18. *Id.* ¶ 100.

19. *Id.* ¶ 101.

20. *Id.* ¶ 110.

21. *Id.* ¶ 101.

22. *Id.*

23. *Id.* ¶ 102.

24. McGuinness Aff. ¶ 21.

25. Def. 56.1 St. ¶¶ 103, 108.

26. Pl. 56.1 St. ¶¶ 97, 101; Voels Aff. at ¶¶ 97, 101.

offers evidence suggesting that (1) the seventh person on the list, Jennifer Won, fraudulently was listed as unavailable,[27] and (2) the signature of the tenth person on the list, Yehudah Becher, was forged on the form declining the promotion.[28] The Civil Service Commission found Mr. Becher's complaint of forgery sufficiently serious to refer it to the Albany County District Attorney.

After being denied the promotion, Voels filed a complaint with the New York State Division of Human Rights (the "SDHR") alleging discrimination based on sex, national origin, and retaliation. On the national origin point, Voels alleged that he was not promoted because he is of German origin and that he would have been promoted if he had been Italian–American. He alleged that those who were promoted were Italian–American or had Italian–American connections.

In the spring of 1988, the EDP was being reorganized, and Voels initially was offered the opportunity to transfer to an office in either Albany or Jamaica, Queens.[29] Voels rejected these options and a compromise was reached by which Voels was transferred to the New York City based Division of Information Technology Management office ("ITM").[30] Voels filed a second SDHR complaint on November 22, 1989, alleging that this transfer was made in retaliation for filing his first SDHR complaint.

After investigation, the SDHR found that there was probable cause for both complaints and a public hearing was ordered. After the hearing, the administrative law judge dismissed both complaints.

The EEOC adopted the findings of the SDHR and issued a right to sue letter on June 29, 1999.

## II. Analysis

Title VII protects against workplace discrimination based on race and other forbidden factors. Because it often is difficult for a plaintiff to locate direct evidence of discrimination, especially at the early stages of litigation, courts considering Title VII complaints follow the burden-shifting proof structure laid out in *McDonnell Douglas Corp. v. Green* and its progeny.[31]

> "[A] plaintiff has the initial burden of making out a prima facie case of discrimination. This may be accomplished by showing (1) membership in a protected class; (2) satisfactory job performance; (3) termination from employment or other adverse employment action; and (4) the ultimate filling of the position with an individual who is not a member of the protected class. Alternatively, the fourth prong of the prima facie case may be satisfied if the plaintiff can demonstrate that the discharge or adverse employment action occurred under circumstances giving rise to an inference of discrimination on the basis of plaintiff's membership in that class.

> "If a plaintiff establishes a prima facie case, a presumption of discrimination is created and the burden of production shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the adverse employment action or termination. The defendant is not required to prove that the articulated reason actually motivated its actions. 'If

---

**27.** Voels Aff. at Exh. 23 ("Won Letter").

**28.** *Id.* at Exh. 25 ("Transamerica Letter").

**29.** Affidavit of Patrick Martone, December 5, 2000, ¶¶ 12–13 ("Martone Aff.").

**30.** *Id.* ¶ 15.

**31.** 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

the defendant fails to discharge the burden by presenting a nondiscriminatory reason, the plaintiff will prevail (assuming the other aspects of the prima facie case are not contested).'

"If the defendant bears its burden of production, the presumption drops out of the analysis, and the defendant 'will be entitled to summary judgment ... unless the plaintiff can point to evidence that reasonably supports a finding of prohibited discrimination.' Evidence that the defendant's articulated nondiscriminatory reason is false, when added to the prima facie case, may or may not be 'sufficient to support a reasonable inference that prohibited discrimination occurred' and warrant submitting the case to the jury." [32]

Title VII protects not only the underlying right of employees to be free from certain forms of discrimination, but also their right to voice complaints regarding treatment that they perceive as violating that right. Claims alleging retaliation for such complaints are considered under a modified *McDonnell Douglas* framework.

"In order to defeat a motion for summary judgment addressed to a claim of retaliation ..., the plaintiff must first present sufficient evidence to make out a prima facie case, that is, evidence sufficient to permit a rational trier of fact to find [1] that she 'engaged in protected participation or opposition under Title VII, [2] that the employer was aware of this activity, [3] that the employer took adverse action against the plaintiff, and [4] that a causal connection exists between the protected activity and the adverse action, i.e., that a retaliatory motive played a part in the adverse employment action.' *Sumner v. United States Postal Service*, 899 F.2d 203, 208–09 (2d Cir.1990); *see, e.g., Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 769 (2d Cir.1998); *Gallagher v. Delaney*, 139 F.3d 338, 349 (2d Cir.1998). If the plaintiff meets this burden and the defendant then points to evidence of a legitimate, nonretaliatory reason for the challenged employment decision, the plaintiff must point to evidence that would be sufficient to permit a rational factfinder to conclude that the employer's explanation is merely a pretext for impermissible retaliation. *See, e.g., Richardson v. New York State Department of Correctional Service*, 180 F.3d 426, 443 (2d Cir.1999); *Gallagher v. Delaney*, 139 F.3d at 349." [33]

As in discrimination cases, a retaliation plaintiff bears the burden of raising a genuine issue of material fact as to whether improper retaliation was "at least one of the 'motivating' factors" in the decision to take the adverse employment action.[34]

Assuming defendants have met the applicable burdens, they would be entitled to summary judgment on a given claim if Voels failed to (1) establish a *prima facie* case, (2) raise a genuine issue of fact as to whether the legitimate, nondiscriminatory reason proffered by the defendants was pretextual, or (3) adduce sufficient evidence to support a jury verdict in his favor despite raising a genuine issue of fact as to whether the defendants' proffered reasons were pretextual. Each of Voels' claims of

---

32. *Farias v. Instructional Sys., Inc.*, 259 F.3d 91, 98 (2d Cir.2001) (quoting *James v. New York Racing Ass'n*, 233 F.3d 149, 153–54 (2d Cir.2000)) (citations omitted).

33. *Cifra v. General Elec. Co.*, 252 F.3d 205, 216 (2d Cir.2001).

34. *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 78 (2d Cir.2001) (quoting *Cronin v. Aetna Life Ins. Co.*, 46 F.3d 196, 203 (2d Cir.1995)).

discrimination and retaliation will be considered in turn.

## A. Gender Discrimination

■ Voels' gender discrimination claim arises out of the favorable treatment he perceived Cruz received from McGuinness. The Court assumes, for the purpose of this motion, that Voels satisfies the requirement of reasonable, good faith belief that he was discriminated against. The Second Circuit, however, does not recognize a supervisor's alleged preference for his or her paramour as discrimination based on gender.[35] While McGuinness may have given Cruz preferential treatment, the preference was based on the relationship between Cruz and McGuinness, not on gender. Voels was treated the same as every woman who was not romantically involved with McGuinness. As Voels has failed to set forth a cognizable claim of gender discrimination, the defendants' motion for summary judgment with respect to the gender discrimination claim is granted.

## B. Discrimination Based on National Origin

■ Voels alleges that he was discriminated against on the basis of his national origin and that fellow employees of Italian and Italian–American descent were given preferential treatment. He alleges that this discrimination was the reason he did not receive the promotion to the vacant EDP Systems Auditor positions.

Voels has satisfied the first three prongs of the *prima facie* case because he has produced evidence showing that he (1) is within a protected group, (2) was qualified for the promotion at issue, and (3) did not receive the promotion. To satisfy the fourth prong, that the promotion decision occurred in circumstances that give rise to an inference of discrimination, Voels alleges that the eligibility list from which promotions were made purposely was manipulated in favor of Italian–Americans. As noted, he has submitted evidence that two of the non-Italian employees on the promotion list fraudulently were listed as unavailable when they in fact were available to accept the position.[36] He contends that this gives rise to an inference of discrimination because those who did receive the promotions allegedly were Italian or Italian–American.[37]

■ Defendants did not offer evidence to contest the national origin of those who were promoted. To the extent that the magistrate judge assumed that Zashkoff (who received the first of the two promotions) was not Italian based on her last name, he inferred this fact against Voels, the nonmoving party.[38] Such an inference is improper at the summary judgment stage. Further, Voels asserts in his objections to the R & R that Zashkoff's maiden name is Polumbo, but the Court does not need to rely on that assertion to find that Voels sufficiently alleged the national origin of those who allegedly were promoted ahead of him.[39] Because Voels has ad-

---

**35.** See *DeCintio v. Westchester Co. Med. Ctr.,* 807 F.2d 304, 308 (2d Cir.1986); *Sullivan–Weaver v. New York Power Auth.,* 114 F.Supp.2d 240, 243 (S.D.N.Y.2000).

**36.** This evidence was in the form of the affidavit of Jennifer Won, an employee ranked higher than Voels and DiDesiderio on the promotion list, affirming that she was actually available to accept the promotion, and a letter detailing the results of a handwriting analysis

and the examiner's opinion that Yehudah Becher's purported signature on the declination form did not match Becher's signature on two of his personal checks.

**37.** Cpt. ¶ 8.

**38.** R & R at 17.

**39.** Voels Dep. at 56.

duced evidence sufficient to give rise to an inference of discrimination, he has satisfied the fourth prong of the *prima facie* case.

■ As Voels has made out a *prima facie* case, the burden shifts to the defendants to come forward with a legitimate, nondiscriminatory reason for promoting DiDesiderio instead of Voels. The defendants have offered two such reasons: (1) DiDesiderio was more qualified than Voels[40] and (2) the decision to promote DiDesiderio was permissible under the Civil Service Law's "one-in-three" rule.[41]

■ Defendants' contention that DiDesiderio was more qualified than Voels satisfies the their burden of proffering a nondiscriminatory reason for the failure to promote Voels. Again, the burden on the defendants at this stage is one of production, not persuasion. However, while defendants' contention that the State was within the Civil Service Law's "one-in-three" rule in selecting DiDesiderio is accurate as far as it goes, it does not satisfy defendants' burden. Defendants must proffer a legitimate, nondiscriminatory *reason* why DiDesiderio, rather than Voels, was promoted. A decision by the state to skip the first person on a promotion list because he or she was black and to promote instead the number two person on the list because he or she is white would be actionable under Title VII even though the state had complied with the "one-in-three" rule. As the Second Circuit has noted,

"To rebut a plaintiff's prima facie case of employment discrimination under Title VII it is not enough for a state agency simply to rely on the broad discretion granted it under state law to make hiring decisions. Instead, the employer must articulate the reasons underlying the exercise of its discretion." [42]

Therefore, the only legally sufficient, nondiscriminatory reason upon which the defendants' rely is the contention that DiDesiderio was more qualified than Voels.

■ This shifts the burden back to Voels to adduce evidence that this reason is pretextual and, in doing so, to demonstrate that there is sufficient evidence to support a jury finding that the defendants discriminated against him based on his national origin. The magistrate judge found that Voels failed to satisfy his burden because he did not offer evidence indicating that he was more qualified than DiDesiderio. Respectfully, this Court disagrees. Voels was ranked higher on the promotion list than DiDesiderio.[43] While the "one-in-three" rule reflects the common sense proposition that the qualifications of candidates for civil service positions properly include factors in addition to test scores, the fact remains that the system rests on the premise that test scores are probative of qualification. While a jury need not regard Voels' superior ranking as demonstrating greater qualification, it would be entitled to do so. In consequence, the Court cannot now exclude the possibility that it would find the defendants' qualification argument to be pretextual.

The question then becomes whether there is enough evidence to support a jury

---

**40.** Specifically, the State argued that DiDesiderio possessed better technical skills and had a greater familiarity with the relevant programs. *See* R & R at 14.

**41.** DiDesiderio was the third remaining candidate.

**42.** *Ibrahim v. New York State Dep't of Health,* 904 F.2d 161, 166 (2d Cir.1990) (citing *Tye v. Bd. of Educ. of the Polaris Joint Vocational School Dist.,* 811 F.2d 315, 320 (6th Cir. 1987)).

**43.** Pl. Obj. to R & R at 1–2.

verdict in Voels' favor. In discussing the third stage of the *McDonnell Douglas* burden shifting framework, the Supreme Court has explained that "the plaintiff may attempt to establish that he was the victim of intentional discrimination 'by showing that the employer's proffered explanation is unworthy of credence.'"[44] In considering whether Voels has met this burden, it is appropriate for the Court to rely on the evidence offered as part of the *prima facie* case.[45] In establishing his *prima facie* case, Voels did more than meet the minimal burden of the *McDonnell Douglas* test. Drawing all inferences in favor of Voels for the purposes of this motion, the finder of fact could credit Voels' evidence that non-Italians Jennifer Won and Yehudah Becher fraudulently were listed as unavailable to accept the promotion, and thus could attribute to the defendants an intent to discriminate against non-Italian-Americans in order to reach DiDesiderio. This in turn would undermine the defendants' ostensibly legitimate explanation for their decision. Hence, this is not a case in which the alleged procedural irregularities fail to support an inference of discrimination.[46] Here, the irregularities were critical to the final promotion decision and the jury could find that they were based on the plaintiff's protected characteristic. Such a finding would support a jury verdict that discrimination played a decisive role in the promotion decision and that Voels was the victim of intentional discrimination. Summary judgment on this question therefore is not appropriate and defendants' motion is denied as to Voels' national origin discrimination claim.

## C. *Retaliation for Complaints Regarding McGuinness' Treatment of Cruz*

### 1. *Bad Evaluation*

█ As Magistrate Judge Francis noted in the R & R, Voels has failed to make out a *prima facie* case with regard to his unfavorable evaluation claim because the mere threat of an "effective but needs improvement" evaluation is not "a materially adverse change in the terms and conditions of employment"[47] and thus does not qualify as adverse employment action. Although there is a dispute as to why the evaluation was changed to "effective" before it was officially filed, this dispute is not material. Because the evaluation was changed to "effective" before it became official, it did not constitute an adverse employment action.

█ Voels claims that the "effective" evaluation itself was an adverse employment action because, he alleges, he should have received a higher evaluation. However, there is no evidence in the record to support this. A party must offer more than mere conclusory allegations to defeat a motion for summary judgment.[48] While Voels has submitted samples of his work, which he alleges demonstrate that he was entitled to a higher rating, there is nothing

---

**44.** *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 143, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) (quoting *Texas Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 256, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)).

**45.** *Texas Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 255, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).

**46.** *See Weinstock v. Columbia Univ.,* 224 F.3d 33, 45 (2d Cir.2000).

**47.** *See Torres v. Pisano,* 116 F.3d 625, 640 (2d Cir.1997).

**48.** *See Goenaga v. March of Dimes Birth Defects Found.,* 51 F.3d 14, 18 (2d Cir.1995).

In the circumstances, it is unnecessary to decide whether an adverse employment evaluation alone would constitute a material adverse employment action.

to which the finder of fact can compare this work and thus nothing to allow the finder of fact to make such a determination.

### 2. Failure to Promote

 Voels has established a *prima facie* case of retaliation with regard to defendants' failure to promote him to the vacant EDP Systems Auditor positions. By complaining to McGuinness about his preferential treatment of Cruz, behavior the Court will assume, for the purpose of this motion, Voels in good faith reasonably believed was gender discrimination, Voels engaged in protected activity.[49] McGuinness, his supervisor, was aware of this activity. Because Voels was qualified for the promotion at issue, and because he was one of the top three remaining candidates for the promotion and did not receive it, Voels suffered an adverse employment action. Finally, he has submitted evidence of a causal relationship between his complaints and the fact that he did not get the promotion.

The defendants have proffered the same explanations for the promotion decision as those discussed in the context of Voels' national origin claim. As noted above, defendants' assertion that their decision not to promote Voels was acceptable under the one-in-three rule does not satisfy this burden, although the contention that DiDesiderio was more qualified than Voels does.

The burden then shifts back to Voels to demonstrate pretext. The magistrate judge found that Voels did not meet this burden because (1) Voels failed to submit

evidence indicating that he was more qualified than DiDesiderio, and (2) no reasonable juror could infer that the failure to promote Voels was retaliation for his filing of the complaint because of the time that elapsed between the complaint and the promotion decision and because of the many people involved in that decision.

 Again, however, the Court disagrees. As explained above, a jury would be entitled to find that Voels was more qualified than DiDesiderio. And while the interval between the complaints about McGuinness' treatment of Cruz and the denial of the promotion to Voels is long, when viewed in the context of the entire relationship between Voels and McGuinness, there is evidence from which the jury could infer that the two events were connected. First, McGuinness prominently displayed in his office that read "I don't get mad, I get even." [50] Second, Voels' account of the five-hour evaluation meeting during which McGuinness threatened him with a rating that was lower than he allegedly deserved is probative of ill will and a retaliatory proclivity on the part of McGuinness.[51] Third, McGuinness admits that Voels was transferred "[s]hortly after Mr. Voels' 1985 performance evaluation," [52] and a jury could find that this too was part of a pattern of retaliation by McGuinness against Voels. Finally, to the extent that, when the promotion decision was made, DiDesiderio was considered more favorably because he had held the EDP Systems Auditor position on a provisional basis, the role that retaliation played, if any,

---

**49.** The Court notes that Voels alleges that he first complained to McGuinness in 1984. According to the Cruz deposition and the McGuinness affidavit, their romantic relationship did not begin until 1985 or 1986. As a result, a jury could find that Voels reasonably, in good faith believed that he was the victim of discrimination based on gender.

**50.** Voels Aff. ¶ 36.

**51.** *Id.* ¶ 32.

**52.** McGuinness Aff. ¶ 16.

in the decision of whom to promote provisionally could support a jury finding of retaliation on the ultimate issue of retaliation in the promotion even though McGuinness was not the sole decisionmaker in the promotion decision.

At this stage of the proceedings, this Court cannot say as a matter of law that there is insufficient evidence to support a jury finding that McGuinness, and retaliation, played a pivotal role in the promotion decision. Accordingly, summary judgment on Voels' retaliatory failure to promote claim is inappropriate.

*D. Transfer in Retaliation for Voels' SDHR Complaint*

█ Following the 1988 promotion decisions, Voels filed a complaint with the SDHR alleging that he had been discriminated against on the basis of his national origin and gender and in retaliation for his complaints regarding McGuinness' treatment of Cruz. He here alleges that defendants retaliated against him for filing this complaint by transferring him out of the EDP Audit unit in October of 1989. As the magistrate judge noted in the R & R, Voels has failed to show that he suffered a materially adverse employment action in this regard. Although he initially was told that he would have to transfer to Albany or Jamaica, Queens, he eventually transferred to the ITM division of DSS. This new position paid the same salary and was in the same general area as his old position. Voels has not offered any evidence that his new position was materially different from his old position.

Voels' claims arising out of his 1989 transfer therefore will be dismissed.

*III. Conclusion*

Defendants' motion for summary judgment dismissing the complaint is granted to the extent that plaintiff's claims based on gender discrimination, the 1985 employment evaluation, and the 1989 transfer are dismissed. The motion is denied in all other respects.

SO ORDERED.