12-3489-cv
*Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs., P.C.*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

—————————

August Term, 2012

(Argued: March 12, 2013     Decided: April 26, 2013)

Docket No. 12-3489-cv

—————————

GAIL KELLY,

*Plaintiff-Appellant*,

-v.-

HOWARD I. SHAPIRO & ASSOCIATES CONSULTING ENGINEERS, P.C.,
LAWRENCE SHAPIRO, JAY SHAPIRO,

*Defendants-Appellees*.

—————————

Before:
WALKER, WESLEY, AND DRONEY, *Circuit Judges*

—————————

Plaintiff-Appellant Gail Kelly asserts that her employers retaliated against her after she complained about a supervisor's affair with a coworker. The United States District Court for the Eastern District of New York (Spatt, *J.*) dismissed Kelly's discrimination and retaliation claims under Federal Rule of Civil Procedure 12(b)(6). Kelly appeals the dismissal of her retaliation claims. We AFFIRM.

—————————

ANDREW S. GOODSTADT, Goodstadt Law Group, PLLC, Carle Place, NY, *for Appellant*.

HENRY E. KRUMAN, Kruman & Kruman P.C., Malverne, NY, *for Appellees Howard I. Shapiro & Associates Consulting Engineers, P.C. and Jay Shapiro.*

PHILIP MARK BERNSTEIN, P.M. Bernstein P.C., Garden City, NY, *for Appellee Lawrence Shapiro.*

---

PER CURIAM:

Gail Kelly quit her job as a human resources manager at her family business after complaining about an affair that one of her brothers, a vice president of the company, was having with another worker in the office. She sued under Title VII of the Civil Rights Act of 1964 and the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 290 *et seq.*, alleging that the affair created a hostile work environment "permeated by sexual favoritism" and that both of her brothers retaliated against her for complaining about the affair. The United States District Court for the Eastern District of New York (Spatt, *J.*) dismissed her complaint in its entirety. *Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C.*, No. 11-CV-5035, 2012 WL 3241402 (E.D.N.Y. Aug. 3, 2012). Kelly appeals the dismissal of her retaliation claims.

**Background**

The following facts are drawn from Kelly's complaint, and we accept them as true for purposes of the motion to dismiss. *See Chase Grp. Alliance LLC v. City of N.Y. Dep't of Fin.*, 620 F.3d 146, 150 (2d Cir. 2010).

Howard I. Shapiro & Associates Consulting Engineers, P.C. ("HIS") is a third-generation family business founded in 1946 by Kelly's grandfather. In 1989, the company was reorganized into a partnership among Kelly's father, Howard I. Shapiro, and her brothers, defendants and company vice presidents Lawrence and Jay Shapiro.[1] Kelly has worked for the business since 1981, performing various jobs including comptroller, office manager, head of human resources, bookkeeper, and time manager. After Kelly's father passed away in May 2007, her brothers "began to exert control" over the company. Compl. ¶ 21.

In November 2008, Kelly discovered that Lawrence "began an illicit affair with a subordinate" named Kelly Joyce. *Id.* ¶ 23. Kelly "attempted to dissuade Lawrence [] from pursuing the relationship, explaining that it would have a detrimental effect on HIS and presented a conflict of

---

[1]We will refer to Lawrence Shapiro by his first name.

interest, not to mention the adverse effect it was having on Ms. Kelly's employment at HIS," but Lawrence "summarily dismissed Ms. Kelly's complaints out of hand." *Id.* ¶¶ 25-26. Kelly alleges that HIS "became so completely permeated with sexual favoritism towards Ms. Joyce that Ms. Kelly's duties and responsibilities were substantially reduced, and her leadership duties were removed in favor of Ms. Joyce, notwithstanding the fact that she was significantly senior to Ms. Joyce." *Id.* ¶ 28. For example, Kelly alleges that Joyce turned in inaccurate or fabricated timesheets and "berated" Kelly for confronting her about them and that Joyce "left the office early on a number of occasions, took unlimited vacation time, and took days off without notifying Ms. Kelly, all in violation of well-established company protocol." *Id.* ¶¶ 29-34.

Kelly alleges that when she spoke to Lawrence about this "favoritism," he "did not discipline Ms. Joyce for her insubordination and patently unprofessional behavior," which Kelly believes created a "sexually-biased environment" that "undermined Ms. Kelly's authority and prevented her from performing her duties as head of Human Resources." *Id.* ¶¶ 35, 39. Kelly describes how she "frequently complained to

4

[her brothers] about the harassment and discriminatory environment created by [Lawrence's] widespread sexual favoritism" and the "hostile environment created by [Lawrence's] relationship with, and favorable treatment of, his subordinate." *Id.* ¶ 40. She "complain[ed] to [her brothers] about [Lawrence's] clandestine tryst with Ms. Joyce and the discrimination and harassment that she suffered due to such relationship," and she "frequently explained . . . that they were undermining her authority in favor of Ms. Joyce, and that she believed that such misconduct constituted unlawful discrimination." *Id.* ¶ 49.

Kelly also alleges that Lawrence's "widespread sexual favoritism . . . created an atmosphere in the workplace that was demeaning to women." *Id.* ¶ 47. "Indeed, veteran female employees complained to Ms. Kelly about the unfair and obvious favoritism shown towards Ms. Joyce." *Id.* ¶ 48. "In fact, several female employees complained that [Lawrence] prevented them from performing their jobs, as they were unable to get into his office to meet with him." *Id.* "Rather, [Lawrence] spent a large portion of each day with Ms. Joyce." *Id.* Kelly does not allege that she reported any of the other female employees' complaints to her brothers.

5

Eventually, Kelly "was left with no option other than to leave the Company after 28 years." *Id.* ¶ 60. She filed her complaint in district court on October 17, 2011, asserting that she had been subjected to a hostile work environment and to retaliatory treatment in violation of Title VII and the NYSHRL. Defendants moved to dismiss Kelly's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

The district court granted the motion. The court first dismissed the hostile environment claim on the ground that Kelly had "failed to plausibly allege the existence of 'widespread sexual favoritism' or that any alleged discrimination *was based on the Plaintiff's gender*." *Kelly*, 2012 WL 3241402, at *7 (emphasis added); *see also id.* at *9 ("Absent from the complaint are any allegations suggesting even the slightest 'semblance of gender-oriented motivation in the events.'" (quoting *Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp.*, 136 F.3d 276, 292 (2d Cir. 1998))). Kelly does not challenge the dismissal of her discrimination claims.

Second, the court dismissed Kelly's retaliation claim because Kelly "fail[ed] to sufficiently allege that she had

6

a good faith, reasonable belief that [the allegedly discriminatory] conduct was based on her gender," as required by this court's jurisprudence. *Id.* at *14, *see also Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002). The court noted that despite Kelly's repeated invocation of "discrimination" and "sexual favoritism," her complaints "were limited to the detrimental impact of the Lawrence-Joyce relationship on the Plaintiff's work and on the company as a whole," and that there was "nothing about the Plaintiff's complaints as alleged that would have put the Defendants on notice that the Plaintiff was complaining of discrimination based on gender." *Id.* at *15, 16.

**Discussion**

"In reviewing a motion to dismiss, we accept the allegations in the complaint as true." *Boykin v. KeyCorp*, 521 F.3d 202, 204 (2d Cir. 2008). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

7

defendant is liable for the misconduct alleged." *Id.* The standards for evaluating hostile work environment and retaliation claims are identical under Title VII and the NYSHRL. *Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 n.1 (2d Cir. 2000).

Although Kelly has not appealed the dismissal of her hostile environment claims, we note first that the dismissal was manifestly correct. Our Circuit has long since rejected "paramour preference" claims, which depend on the proposition that "the phrase 'discrimination on the basis of sex' encompasses disparate treatment premised not on one's gender, but rather on a romantic relationship between an employer and a person preferentially [treated]." *DeCintio v. Westchester Cnty. Med. Ctr.*, 807 F.2d 304, 306 (2d Cir. 1986); *see also id.* at 308 ("Appellees were not prejudiced because of their status as males; rather, they were discriminated against because [their supervisor] preferred his paramour."). "[I]t is axiomatic that in order to establish a sex-based hostile work environment under Title VII, a plaintiff must demonstrate that the conduct occurred because of her sex." *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002) (quotation marks omitted).

8

To make out a *prima facie* case of retaliation, a plaintiff must demonstrate that "(1) she engaged in protected activity; (2) the employer was aware of that activity; (3) the employee suffered a materially adverse action; and (4) there was a causal connection between the protected activity and that adverse action." *Lore v. City of Syracuse*, 670 F.3d 127, 157 (2d Cir. 2012).

An employee's complaint may qualify as protected activity, satisfying the first element of this test, "so long as the employee has a good faith, reasonable belief that the underlying challenged actions of the employer violated the law." *Gregory v. Daly*, 243 F.3d 687, 701 (2d Cir. 2001) (quotation marks omitted). And not just any law – the plaintiff is "required to have had a good faith, reasonable belief that [she] was opposing an employment practice made unlawful by Title VII." *McMenemy v. City of Rochester*, 241 F.3d 279, 285 (2d Cir. 2001); *see also id.* (vacating summary judgment where plaintiff's "belief that [defendant's] alleged sexual harassment violated Title VII was reasonable"). "The reasonableness of the plaintiff's belief is to be assessed in light of the totality of the circumstances." *Galdieri-Ambrosini*, 136 F.3d at 292.

9

A plaintiff's belief on this point is not reasonable simply because he or she complains of something that appears to be discrimination in some form. For example, when a hospital administrator asserted that he had been terminated after complaining that a white employee had been "chosen over qualified black and other minority applicants," we held that the administrator failed to make out a *prima facie* case because his "objections at the time neither pointed out discrimination against particular individuals nor discriminatory practices by [the employer]" and were thus "directed at something that, as it was alleged, is not properly within the definition of an 'unlawful employment practice.'" *Manoharan v. Columbia Univ. Coll. of Physicians & Surgeons*, 842 F.2d 590, 593-94 (2d Cir. 1988) (quoting 42 U.S.C. § 2000e-2(j) (1982)).

Similarly, a black police officer who "reported overhearing racial slurs made by [other] police officers against black citizens" had not engaged in protected activity despite "opposing discrimination by co-employees against non-employees" because his "opposition was not directed at an unlawful *employment practice* of his employer." *Wimmer v. Suffolk Cnty. Police Dep't*, 176 F.3d

10

125, 134-35 (2d Cir. 1999) (emphasis in original); *see also Drumm v. SUNY Geneseo Coll.*, 486 Fed. Appx. 912, 914 (2d Cir. 2012) ("[P]laintiff's allegations that her supervisor 'berated' her and made other harsh comments . . . amount only to general allegations of mistreatment, and do not support an inference that plaintiff had a reasonable good faith belief that she was subject to gender discrimination.").

"As to the second element [of the *prima facie* case], implicit in the requirement that the employer have been aware of the protected activity is the requirement that it understood, or could reasonably have understood, that the plaintiff's opposition was directed at conduct prohibited by Title VII." *Galdieri-Ambrosini*, 136 F.3d at 292. In *Galdieri-Ambrosini*, we affirmed a district court's post-trial entry of judgment as a matter of law against a secretary who complained that she had been improperly required to work on her employer's personal matters. We concluded that "there was no semblance of gender-oriented motivation in the events or conversations to which [the plaintiff] testified" and that the plaintiff's complaints to her supervisor "did not state that [she] viewed [her

11

supervisor's] actions as based on her gender, and there was nothing in her protests that could reasonably have led [the company] to understand that that was the nature of her objections." *Id.*

Here, Kelly's claim founders on both the first and second requirements of the *prima facie* case. Although "[n]othing in our Title VII jurisprudence . . . requires a plaintiff to append to each allegation of harassment the conclusory declaration 'and this was done because of my sex,'" we do require "the allegation of factual circumstances that permit the inference that plaintiff was subjected to a hostile work environment because of her sex." *Gregory*, 243 F.3d at 694. There is nothing in Kelly's complaint, however, to indicate that "her sex, in one way or another, played a substantial role in [her brothers'] behavior." *Id.* Although Kelly alleges that she repeatedly used the words "discrimination" and "harassment" when complaining to her employers, her "argument that the widespread sexual favoritism constituted gender discrimination because it resulted in an atmosphere 'demeaning to women'[] is entirely unsupported by the allegations in her complaint." *Kelly*, 2012 WL 3241402, at

12

*11.  Kelly "does not allege that Lawrence and Joyce engaged in sexually explicit behavior or conversations in the office, or that Lawrence took *any* actions or made any statement[s] that were of a sexual or gender-specific nature that could be perceived as 'demeaning to women.'"  *Id.* (emphasis in original).  Nothing in the complaint indicates that "sexual discourse displaced standard business procedure in a way that prevented [Kelly] from working in an environment in which she could be evaluated on grounds other than her sexuality."  *Drinkwater v. Union Carbide Corp.*, 904 F.2d 853, 862 (3d Cir. 1990); *see also id.* at 864 (Plaintiff's "opposition to the liberties which [her supervisors] took with [the company's] resources, policies and chain of command . . . could [not] reasonably be believed to have resulted from the fact that [plaintiff] possessed the protected characteristic of womanhood.").

Thus, there is no indication either that Kelly herself possessed a good-faith belief that she was complaining of conduct prohibited by Title VII or that her employers could have understood her complaints in this way.  Kelly suggests only that she believed her brothers were "undermining her authority in favor of Ms. Joyce, and that she believed that

13

such misconduct constituted unlawful discrimination." Compl. ¶ 49. Moreover, the complaint does not indicate that the office environment was "demeaning to women." Kelly's allegations regarding other female employees in the office state only that they complained to Kelly about the "favoritism shown towards Ms. Joyce" and that they were "unable to get into [Lawrence's] office to meet with him." *Id.* ¶ 48. Nothing about these allegations – even if Kelly had repeated them to Lawrence, which she does not claim to have done – indicates that there was discrimination against anyone on the basis of sex. *See Wimmer*, 176 F.3d at 136 ("Because [the plaintiff] did not introduce evidence that minority employees of the Department felt that they worked in a racially hostile environment, [he] could not reasonably have believed that he was protesting an unlawful hostile work environment.").

Kelly relies heavily on *Voels v. New York*, 180 F. Supp. 2d 508 (S.D.N.Y. 2002), which not only does not support but undermines her case. The male plaintiff, Voels, alleged that his supervisor gave preferential treatment to a female coworker, with whom the supervisor later became romantically involved. *Id.* at 511. The court granted summary judgment

14

for the defendant on Voels's sex discrimination claim, noting that any preferential treatment "was based on the relationship [and] not on gender." *Id.* at 515. The court allowed the retaliation claim to survive, however, noting that Voels had alleged that he first complained of sex-based treatment the year *before* the relationship began, which would allow a jury to find that his belief that he was discriminated against was reasonable. *Id.* at 518 n.49.

Kelly protests that as a non-lawyer, she should not be required to understand the "paramour preference" or other intricacies of our Title VII jurisprudence. She argues that her belief that her complaints concerned unlawful activity was sufficiently reasonable to bring the complaints within Title VII's protection. We have indeed held that a "plaintiff may prevail on a claim for retaliation even when the underlying conduct complained of was not in fact unlawful so long as [she] can establish that [she] possessed a good faith, reasonable belief that the underlying challenged actions of the employer violated [the] law." *Treglia*, 313 F.3d at 719 (quotation marks omitted). However, "[m]ere subjective good faith belief is insufficient[;] the belief must be reasonable and

characterized by *objective* good faith." *Sullivan-Weaver v. N.Y. Power Auth.*, 114 F. Supp. 2d 240, 243 (S.D.N.Y. 2000) (emphasis in original). The objective reasonableness of a complaint is to be evaluated from the perspective of a reasonable similarly situated person.

Although it is appropriate to construe Title VII's prohibition on retaliation generously, and we do not require a sophisticated understanding on the part of a plaintiff of this relatively nuanced area of law, it is difficult to see how Kelly could have had even a subjectively reasonable, good-faith belief that her conduct was protected. She made no complaints that suggested a belief that she was being discriminated against on the basis of any trait, protected or otherwise. The success of her claim would require us to endorse not only her belief that the law of Title VII is something other than what it is, but also her apparent belief that the definition of "discrimination" is something other than what it is. We agree with the district court that Kelly has failed to allege facts demonstrating that "even a legally unsophisticated employee would have a good faith, reasonable belief that . . . the Defendants' preferential treatment of Joyce constituted discrimination

16

[against Kelly] based on gender." *Kelly*, 2012 WL 3241402, at *13.

Moreover, even if Kelly had possessed such a belief, nothing in her behavior, as described in her complaint, would have allowed her employer to "reasonably have understood[] that [Kelly's] opposition was directed at conduct prohibited by Title VII." *See Galdieri-Ambrosini*, 136 F.3d at 292; *see also Manoharan*, 842 F.2d at 594 (plaintiff's complaints "neither pointed out discrimination against particular individuals nor discriminatory practices"). Although particular words such as "discrimination" are certainly not required to put an employer on notice of a protected complaint, neither are they sufficient to do so if nothing in the substance of the complaint suggests that the complained-of activity is, in fact, unlawfully discriminatory. *See Foster v. Humane Soc'y of Rochester & Monroe Cnty., Inc.*, 724 F. Supp. 2d 382, 395 (W.D.N.Y. 2010) (dismissing retaliation claim when the plaintiff's "own allegations . . . show instead that while she did complain about certain problems she was having at work, she did not complain that she was being discriminated against on account of her sex"); *Krasner v. HSH Nordbank AG*,

17

680 F. Supp. 2d 502, 521 (S.D.N.Y 2010) (Lynch, *J.*) ("[T]he overall content and context of [the plaintiff's] internal complaints suggest, at most, a consensual affair that – while perhaps unfair, bad for morale, and detrimental to the department and the company – in itself harmed no one on account of a protected characteristic.").

It is certainly possible to imagine how a plaintiff's protests about a "paramour preference" scenario could amount to protected activity. Had Kelly complained, or even suggested, that she was being discriminated against because of her sex (or some other trait), we would have a different case. Nothing in her complaint, however – not the accusations of "sexual favoritism," nor the continual repetition of the words "discrimination" and "harassment" – suggests that she did so. Because there is no indication that Kelly believed that her sex had anything to do with her treatment or that defendants could have understood her statements as such, she has failed to establish a *prima facie* case for retaliation under Title VII or the NYSHRL.

18

## Conclusion

We have examined all of Kelly's arguments on appeal and find them to be without merit.  For the foregoing reasons, the judgment of the district court dismissing Kelly's complaint is **AFFIRMED**.