*Leroy v. Delta Air Lines, Inc.*

# In the
# United States Court of Appeals
## FOR THE SECOND CIRCUIT

---

AUGUST TERM 2021
No. 21-267

**CLARA LEROY,**
*Plaintiff-Appellant,*

v.

**DELTA AIR LINES, INC.,**
*Defendant-Appellee.*

---

On Appeal from the United States District Court
for the Eastern District of New York

---

ARGUED: AUGUST 31, 2021
DECIDED: JUNE 9, 2022

---

Before:     WALKER, BIANCO, and MENASHI, *Circuit Judges.*

Clara Leroy worked as a flight attendant for Delta Air Lines. Leroy alleges that, while working on an airplane, she heard a passenger refer to her using a racist remark and reported the passenger's remark to the pilot. The pilot responded by demanding that Leroy "step out on the jet bridge with the passenger," and when

she refused the pilot had her removed from the plane. Leroy reported the pilot's conduct to her supervisor, and within two months of these events Leroy alleges she was subjected to random drug testing, wrongfully suspended, and ultimately fired. She filed a complaint in state court, alleging retaliation and vicarious liability under the New York City Human Rights Law. Delta removed the case to federal district court and moved to dismiss for failure to state a claim. The district court granted the motion, holding that Leroy failed adequately to allege that Delta had discriminated against her and that she therefore failed to allege retaliation for a protected activity under the NYCHRL. Because Leroy's complaint did not allege facts adequate to support a good-faith, reasonable belief that Delta engaged in discrimination against her, we affirm the judgment of the district court dismissing this case.

JUDGE BIANCO dissents in a separate opinion.

---

ANTONIA KOUSOULAS, Kousoulas & Associates, New York, NY, *for Plaintiff-Appellant*.

IRA G. ROSENSTEIN (Michael F. Fleming, *on the brief*), Morgan, Lewis & Bockius LLP, New York, NY, *for Defendant-Appellee*.

---

MENASHI, *Circuit Judge*:

Clara Leroy appeals the dismissal of her complaint under the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 to 8-134 ("NYCHRL"), against Delta Air Lines ("Delta"). Her complaint alleges that, while working as a flight attendant for Delta, she was

2

subjected to drug testing, wrongfully suspended, and ultimately fired within two months of her reporting a passenger's racist remark and the pilot's response to that remark. Those actions, according to Leroy's complaint, constituted impermissible retaliation on the part of Delta. The district court dismissed her complaint, holding that Leroy failed to state a claim for relief.

We agree. The NYCHRL prohibits retaliation for "opposing [the] employer's discrimination." *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 112 (2d Cir. 2013). To succeed on a retaliation claim, the plaintiff must at least have a good-faith, reasonable belief that she was opposing an unlawful employment practice. *See Reed v. A.W. Lawrence & Co.*, 95 F.3d 1170, 1178 (2d Cir. 1996). On the facts as alleged, Leroy could not have reasonably and in good faith believed that the passenger's comment or the pilot's conduct was an unlawful employment practice. We therefore affirm the district court's judgment dismissing her claims.

## BACKGROUND

"We review a district court's grant of a motion to dismiss *de novo*, accepting as true all factual claims in the complaint and drawing all reasonable inferences in the plaintiff's favor." *Henry v. County of Nassau*, 6 F.4th 324, 328 (2d Cir. 2021) (internal quotation marks omitted).

## I

Leroy is an African American woman who began working as a flight attendant for Delta in October 2000. Her employment lasted almost seventeen years and included several different supervisors. Before May 2017, she "never experienced any complications with any

3

of her prior supervisors," was "never suspended," and never "faced any kind of disciplinary action." App'x 18.

That changed with the circumstances giving rise to this case. On May 18, 2017, Leroy was assigned to a Delta flight. Before the plane had left the gate, she heard "a disgruntled passenger who was racist" call her a "black bitch." *Id.* She complained about the incident to the pilot, Captain Carns, who "demanded" that Leroy "step out on the jet bridge with the passenger." *Id.* Leroy refused, claiming "that per FAA regulations she could not step off the airplane" and that she did not want to converse with the passenger. *Id.*

Carns responded to Leroy's refusal by contacting the Operations Control Center ("OCC") "to get [Leroy] removed off the flight for disrespecting him and his command." *Id.* The OCC initially refused, but after Carns's ultimatum that "either she goes, or I go," it removed Leroy from the flight. *Id.* at 19. Two days later, Leroy's supervisor, John Marsh, instructed her to fill out a Flight Attendant Comment Tracking System (FACTS) report about the incident with Carns. Leroy also received a letter complimenting her composure from a passenger who had witnessed her interaction with Carns. When this letter reached Delta's attention, Delta sent Leroy its own letter "along with award points for getting a compliment letter from a valued passenger." *Id.*

On June 14, Leroy reached out to another of her supervisors, David Gilmartin, and "informed him fully of the pilot situation." *Id.* The next day, June 15, she was removed from a flight for a random drug test. Because Leroy did not produce enough urine for the test, she submitted to another drug test that same day. During the second drug test, a flight attendant supervisor and the person administering

4

the test both asked Leroy "several questions about her past drug use," and Leroy responded that "she was not taking any drugs." *Id.* Leroy was then suspended for thirty days. The flight attendant supervisor told Leroy that "if your drug test comes back negative then you will be taken off suspension." *Id.* at 20. Leroy alleges that she "knew that she would pass because … there were no drugs in her system." *Id.* A week later, on June 22, Gilmartin "informed her that she was wrongfully suspended." *Id.* Even so, on July 3 Leroy received a suspension letter from Delta. Seventeen days after that, she was fired.

## II

On December 31, 2019, Leroy filed suit against Delta in the New York Supreme Court, Kings County. Her complaint asserted claims for retaliation and vicarious liability under the NYCHRL. In the complaint, Leroy alleges, first, that Delta "engaged in an unlawful discriminatory practice in violation of [NYCHRL § 8-107(1)] by terminating Plaintiff after her complaint of discrimination" and, second, that Delta is liable under NYCHRL § 8-107(13) for its employees' "discriminatory conduct," which includes the drug tests and the wrongful suspension.

On February 25, 2020, Delta removed the case to the U.S. District Court for the Eastern District of New York. Delta then moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6). Delta argued that Leroy's account of the incident on the airplane contradicted the FACTS report and, in any event, her account did not show that Delta itself discriminated against Leroy. Because of that deficiency, Delta argued, Leroy's claims of retaliation and vicarious liability must fail.

5

On January 11, 2021, the district court granted Delta's motion to dismiss. *Leroy v. Delta Airlines, Inc.*, No. 20-CV-1033, 2021 WL 84278, at *1 (E.D.N.Y. Jan. 11, 2021). The district court concluded that Leroy "fails to state a claim for retaliation against Delta" because she does not allege facts showing "that she complained about discrimination by Delta" apart from asserting this "legal conclusion." *Id.* at *3. The district court also held that, because "Leroy has not alleged a violation of the NYCHRL, there is no basis for employer liability." *Id.* at *3.

Leroy timely appealed.

## DISCUSSION

"We review *de novo* the grant of a motion to dismiss for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6)." *Harris v. Mills*, 572 F.3d 66, 71 (2d Cir. 2009). Leroy's complaint asserts claims only under the NYCHRL, which provides protection from discrimination to inhabitants of, and people who work in, New York City. *Hoffman v. Parade Publ'ns*, 15 N.Y.3d 285, 289-90 (2010). The NYCHRL provides that it should "be construed liberally for the accomplishment of the uniquely broad and remedial purposes thereof." *Mihalik*, 715 F.3d at 109 (quoting N.Y.C. Admin. Code § 8-130). But its scope is not unlimited. "[T]he NYCHRL is not a general civility code," and "a defendant is not liable if the plaintiff fails to prove the conduct is caused at least in part by discriminatory or retaliatory motives." *Id.* at 113. The NYCHRL may be construed broadly but "only to the extent that such a construction is reasonably possible." *Makinen v. City of New York*, 857 F.3d 491, 495 (2d Cir. 2017) (internal quotation marks omitted).

6

On appeal, Leroy argues that the district court erred when it dismissed her claims for retaliation and vicarious liability. We address each claim in turn.[1]

**I**

The NYCHRL provides that "[i]t shall be an unlawful discriminatory practice … to retaliate or discriminate in any manner against any person because such person has … opposed any practice forbidden under this chapter." N.Y.C. Admin. Code § 8-107(7). "[T]o prevail on a retaliation claim under the NYCHRL, the plaintiff must show that she took an action opposing her employer's discrimination, and that, as a result, the employer engaged in conduct that was reasonably likely to deter a person from engaging in such action." *Mihalik*, 715 F.3d at 112 (citation omitted).

To survive a motion to dismiss, a plaintiff claiming retaliation under the NYCHRL must allege that she engaged in protected

---

[1] The parties dispute whether the FACTS report was incorporated into the complaint such that we may consider it on a motion to dismiss. *See Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230 (2d Cir. 2016) ("A complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.") (internal quotation marks omitted). According to the FACTS report, it was actually the passenger who complained to Carns and who prompted the exchange between Carns and Leroy. The report also does not indicate that Leroy ever informed Carns about a racist remark. Instead, according to the report, Leroy told Carns that the passenger "is just upset that [the flight] [is] now delayed." App'x 38. Delta argues that we should credit the FACTS report over the allegations in Leroy's complaint and that Leroy could not have engaged in protected activity if she never told Carns about a racist remark. We need not decide whether the FACTS report is incorporated into the complaint because we conclude that the complaint fails to state a claim even without considering the FACTS report.

activity. *See Albunio v. City of New York*, 16 N.Y.3d 472, 479 (2011) ("Since [the plaintiff's NYCHRL] claim is limited to retaliation, she can prevail only if she shows that she 'opposed' discrimination."). The plaintiff "need not prove that her underlying complaint of discrimination had merit but only that it was motivated by a good faith, reasonable belief that the underlying employment practice was unlawful." *Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 843 (2d Cir. 2013) (internal quotation marks and citation omitted). If the underlying employment practice was unlawful, however, that establishes the reasonableness of her belief. *Gregory v. Daly*, 243 F.3d 687, 701 (2d Cir. 2001) (noting that a plaintiff "could reasonably have believed that [the defendant]'s conduct violated Title VII" because "the facts she alleges support a hostile work environment claim of sex discrimination"). We therefore consider whether the allegations support a claim of discrimination on the part of Delta before considering whether Leroy otherwise had a good-faith, reasonable belief that the conduct she opposed was an unlawful employment practice.

### A

Leroy argues that she opposed two instances of racial discrimination by Delta. First, she points to the passenger's remark and argues that Delta "may be held liable for the discriminatory comment of the passenger." Appellant's Br. 7. Second, Leroy argues that "Carns's response to [her] complaint" about the remark—his demand that she step onto the jet bridge with the passenger and his subsequent demand that Leroy be taken off the flight—"was itself an unlawful discriminatory practice under the NYCHRL." *Id.* at 11. We disagree with both arguments.

8

Leroy's claim that Delta is liable for the passenger's comment sounds in vicarious liability. The NYCHRL imposes liability on an employer for actions of an employee or agent in three circumstances:

> (1) where the offending employee "exercised managerial or supervisory responsibility" …; (2) where the employer knew of the offending employee's unlawful discriminatory conduct and acquiesced in it or failed to take "immediate and appropriate corrective action"; and (3) where the employer "should have known" of the offending employee's unlawful discriminatory conduct yet "failed to exercise reasonable diligence to prevent it."

*Zakrzewska v. New School*, 14 N.Y.3d 469, 479 (2010) (alteration omitted) (quoting N.Y.C. Admin. Code § 8-107(13)(b)). In *Summa v. Hofstra University*, we held in the Title VII context that we "imput[e] employer liability for harassment by non-employees according to the same standards for non-supervisory co-workers." 708 F.3d 115, 124 (2d Cir. 2013).[2] We recently interpreted those standards to provide that "the conduct of certain non-employees may be imputed to the employer where (1) the employer exercises a high degree of control over the behavior of the non-employee, and (2) the employer's own

---

[2] No decision of the New York Court of Appeals has held an employer liable under the NYCHRL for the conduct of a non-employee, and the text of the NYCHRL does not appear to impose such liability. *See Makinen*, 857 F.3d at 495. But because the NYCHRL treats Title VII as "a floor below which the NYCHRL cannot fall," *Velazco v. Columbus Citizens Found.*, 778 F.3d 409, 410 (2d Cir. 2015) (alteration omitted) (quoting N.Y.C. Local L. No. 85, § 1), we assume here that it includes the liability we identified in *Summa*. Thus, although the dissent suggests that we interpret the NYCHRL too narrowly, *post* at 16, no New York court has interpreted the NYCHRL as broadly as we do here.

negligence permits or facilitates that non-employee's discrimination." *Menaker v. Hofstra Univ.*, 935 F.3d 20, 38-39 (2d Cir. 2019) (internal quotation marks omitted). "In determining the appropriateness of an employer's response, we look to whether the response was immediate or timely and appropriate in light of the circumstances, particularly the level of control and legal responsibility the employer has with respect to" the non-employee. *Summa*, 708 F.3d at 124 (internal quotation marks and alterations omitted).

In *Summa*, the plaintiff brought claims under Title VII and the New York State Human Rights Law alleging that the actions of the university's student football players created a hostile work environment. *Id.* at 123-24. Although "the University and the head football coach had a high degree of control over the behavior of its student football players," we held that Hofstra met its "remedial obligation to address and end the harassment" when it ejected the offending student within 48 hours of the plaintiff's complaint. *Id.* at 124-25. Thus, we affirmed the grant of summary judgment to Hofstra on the hostile work environment claim.

We need not consider whether Leroy has adequately alleged that Delta exercised a "high degree of control" over the passenger because she has failed to allege that Delta's "own negligence permit[ted] or facilitate[d]" the passenger's alleged discriminatory conduct. *Menaker*, 935 F.3d at 39 (internal quotation marks omitted). The passenger's single comment—which was uttered prior to any alleged notice on Delta's part—is the only instance mentioned in the complaint of that passenger engaging in alleged discrimination against Leroy. That comment does not rise to the level of the sort of "extraordinarily severe" and "most egregious" conduct that could, in

a single incident, create a hostile work environment. *Agosto v. N.Y.C. Dep't of Educ.*, 982 F.3d 86, 103 (2d Cir. 2020) (noting that this standard was met when a plaintiff was raped or physically assaulted).[3] There is also no allegation in the complaint that Delta "did not monitor the workplace, failed to respond to complaints, failed to provide a system for registering complaints, or effectively discouraged complaints from being filed" so as to show Delta's negligence in failing to prevent the passenger's comment. *Vance v. Ball State Univ.*, 570 U.S. 421, 449 (2013). The complaint's description of Carns's response to the passenger's comment does not amount to a plausible allegation that Delta permitted or facilitated that comment. *See Swiderski v. Urban Outfitters, Inc.*, No. 14-CV-6307, 2017 WL 6502221, at *9 (S.D.N.Y. Dec. 18, 2017) ("[G]enerally, an employer is not liable for failing to prevent an act of harassment by a first-time customer.") (quoting *Swiderski v. Urban Outfitters, Inc.*, No. 14-CV-6307, 2015 WL 3513088, at *3 (S.D.N.Y. June 4, 2015)).

Leroy additionally argues, for the first time on appeal, that Carns's conduct following her complaint was an unlawful discriminatory practice.[4] "Ordinarily, we will not consider an issue raised for the first time on appeal." *Readco, Inc. v. Marine Midland Bank*,

---

[3] Leroy's counsel conceded at oral argument that she "[does not] think that comment alone would suffice" to establish a hostile work environment claim. Oral Argument Audio Recording at 38:35.

[4] The dissent suggests that Leroy's mere mention of the FACTS report and "the pilot situation" in her complaint means that she sufficiently argued to the district court that—apart from her primary argument that the passenger's conduct should be imputed to Delta—the pilot's conduct was also itself a discriminatory practice she opposed. *Post* at 7 n.5. We disagree. But because we consider her argument nonetheless, this point makes no difference in our analysis.

81 F.3d 295, 302 (2d Cir. 1996) (internal quotation marks omitted). In any event, even when a non-employee's conduct is imputed to the employer, the employer is obliged only to "address and end the harassment." *Summa*, 708 F.3d at 124. The complaint does not indicate that Carns's response—calling for a further discussion between Leroy and the passenger on the jet bridge—was insufficient. In fact, the only alternative remedy at which Leroy hints is that Carns should have removed the passenger from the airplane immediately. Yet even in *Summa* we did not require that the university immediately expel the offending players from the team. *See id.* (noting that only one player—who had two other "strikes"—was expelled). Accordingly, Leroy's complaint does not allege that Carns's response amounts to a discriminatory employment practice.

We therefore conclude that Leroy has failed to allege facts to support a claim of racial discrimination under the NYCHRL.

**B**

That Leroy opposed conduct which did not in fact violate the NYCHRL does not end the matter. Even if a complaint is ultimately without merit, lodging the complaint is a protected activity so long as it was "motivated by a good faith, reasonable belief that the underlying employment practice was unlawful." *Kwan*, 737 F.3d at 843 (internal quotation marks omitted).[5] "The reasonableness of the

---

[5] The dissent asserts that our opinion is "incompatible with the Supreme Court's dictate that Title VII's antiretaliation provision be interpreted broadly." *Post* at 12. In fact, the Supreme Court has expressly declined to endorse this court's interpretation of Title VII—which provides protection under Title VII's antiretaliation provision even when the complained-of employment practice was not discriminatory. *Clark Cnty. Sch. Dist. v.*

plaintiff's belief is to be assessed in light of the totality of the circumstances" and is "evaluated from the perspective of a reasonable similarly situated person." *Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C.*, 716 F.3d 10, 14-17 (2d Cir. 2013).

That principle is forgiving, but it does not transform every complaint into activity protected under the NYCHRL. In *Kelly*, this court observed that "[a] plaintiff's belief … is not reasonable simply because he or she complains of something that appears to be discrimination in some form." *Id.* at 15. We affirmed the dismissal of a Title VII retaliation claim because "nothing in [the plaintiff's] complaint … indicate[s] that her sex, in one way or another, played a substantial role in [her employer's] behavior." *Id.* (internal quotation marks omitted). In another Title VII case, this court held that a plaintiff "could not have reasonably believed that he was opposing an employment practice" when "the evidence does not address racial discrimination in an employment practice." *Wimmer v. Suffolk Cnty. Police Dep't*, 176 F.3d 125, 136 (2d Cir. 1999).

The facts as alleged in Leroy's complaint do not demonstrate that a reasonable similarly situated person would have a good-faith, reasonable belief that Delta was engaged in an unlawful employment practice. *See Kelly*, 716 F.3d at 17. As noted above, the passenger's comment was not an employment practice, so it falls outside the scope of the NYCHRL. *See Cooper v. N.Y. State Dep't of Labor*, 819 F.3d 678,

---

*Breeden*, 532 U.S. 268, 270 (2001); *see also Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 187 (2005) (Thomas, J., dissenting). By asking not only whether the employment practice was discriminatory but also whether the complainant had a good-faith, reasonable belief that it was, we are interpreting the antiretaliation provision more broadly than the Supreme Court requires.

681 (2d Cir. 2016) ("[A Title VII] plaintiff alleging unlawful retaliation may not recover unless he reasonably believed that the conduct he opposed ran afoul of one of [Title VII's] particular statutory proscriptions.").[6] Neither would it have been objectively reasonable to believe that Carns's conduct was a discriminatory employment practice. Leroy does not explain what Carns should have done differently under the circumstances. To the extent she argues Carns should have removed the passenger, such a remedy was not required in *Summa*—the case on which Leroy relies for her theory that Delta should be liable for the passenger's conduct at all. *See* 708 F.3d at 124; *see also Francis v. Kings Park Manor, Inc.*, 944 F.3d 370, 393 (2d Cir. 2019) (Livingston, J., dissenting) (arguing that there can be no liability

---

[6] The dissent suggests that Leroy has been penalized for complaining "too soon." *Post* at 11-12. In its view, our holding denies protection to complainants who "oppose[] a hostile work environment that, although not fully formed, is in progress." *Id.* at 13 (quoting *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 282 (4th Cir. 2015) (en banc)). Leroy, however, has not adequately alleged a good-faith, reasonable belief either that a hostile work environment was in progress or that the objectionable conduct was attributable to the employer. She has not alleged a policy or practice on Delta's part that would make it reasonable for her to believe the passenger's single comment marked the beginning stage of a hostile work environment or that the passenger's conduct could be imputed to Delta. In *Boyer-Liberto*, by contrast, the employee alleged that the offending co-worker "could make a discharge decision or recommendation that would be rubber-stamped by" the employer, and therefore the court held that, "in gauging the severity of [the co-worker's] conduct, we deem [the co-worker] to have been [the employee's] supervisor" and "view [the co-worker's] conduct as having the particular threatening character of harassment perpetrated by a supervisor against her subordinate." 786 F.3d at 269-70, 280 (internal quotation marks omitted). It is not clear that *Boyer-Liberto* would have been decided the same way if the offensive statements came from a customer rather than a co-worker who was effectively a supervisor.

under the Fair Housing Act for the failure of a landlord to respond to a complaint about a tenant if "the majority cannot even *suggest* what the [landlords] *might have done differently* when [the plaintiff] contacted them"), *rev'd en banc*, 992 F.3d 67 (2d Cir. 2021).[7]

Because the facts as alleged in Leroy's complaint support neither a claim of racial discrimination by Delta nor a good-faith, reasonable belief that Leroy engaged in protected activity, we affirm the dismissal of her retaliation claim under the NYCHRL.

**II**

Leroy also appeals the district court's dismissal of her claim that Delta is vicariously liable for its employees' actions. In certain circumstances, the NYCHRL provides that "[a]n employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent." N.Y.C. Admin. Code § 8-107(13)(b). As noted above, however, Leroy's complaint does not present facts that support a plausible allegation of any "unlawful discriminatory practice." *Id.* We therefore affirm the district court's dismissal of this claim as well.

\*          \*          \*

For these reasons, we **AFFIRM** the judgment of the district court.

---

[7] The dissent refers obliquely to Delta's purported ability "to take some other appropriate remedial action," *post* at 7, but it does not explain what that remedial action might have been.

15

JOSEPH F. BIANCO, *Circuit Judge*, dissenting:

Plaintiff Clara Leroy alleges that, as a flight attendant on a Delta Airlines flight, she was subjected to a humiliating racist comment by a passenger prior to take-off. Leroy further alleges that, after immediately reporting the passenger's racist comment to the pilot, the pilot removed Leroy from the flight and Leroy was suspended and ultimately terminated after making additional complaints to Delta supervisors about the flight incident. The majority holds that, even if these allegations are true, Leroy has failed to state a plausible retaliation claim because her complaints about this racist comment in the workplace (and the pilot's response to it) did not constitute "protected activity" shielded from retaliation by an employer under the law. *Ante*, at 3, 12–13. As set forth below, the majority's holding is contrary to the language and purpose of Title VII as construed by this Court and the United States Supreme Court. More importantly, as it relates to the claim in this case, which is solely for retaliation under the New York City Human Rights Law ("NYCHRL"), the holding is fundamentally inconsistent with New York state court precedent interpreting the NYCHRL, which gives even more extensive rights to employees than Title VII and explicitly mandates that courts interpret its terms to provide the broadest construction that is reasonably possible

1

to protect employees facing discrimination or retaliation in the workplace.[1] The troubling effect of the majority's flawed holding is to immunize employers from liability when they retaliate against employees who complain about workplace racial harassment at its inception, even before such harassment may rise to the legal threshold of a hostile work environment. By doing so, the majority requires employees in such situations to wait and endure some additional period of harassment before they can complain and be shielded from employer retaliation under the NYCHRL. Therefore, I respectfully dissent.

At its core, the complaint in this case alleges the following: (1) on May 18, 2017, Leroy was working as a flight attendant on a flight for Delta Airlines; (2) before the plane took off, a passenger called Leroy a "black b****"; (3) when Leroy complained to the pilot, the pilot "demanded that [Leroy] step out on the jet bridge with the passenger"; (4) following Leroy's refusal to do so, the pilot had Leroy (and not the passenger) removed from the flight; (5) two days later, Leroy's

---

[1] As discussed *infra*, although "[i]nterpretations of New York state or federal statutes with similar wording"—such as Title VII—"may be used to aid in interpretation of [the NYCHRL]," such provisions establish only "a *floor* below which the City's Human Rights law cannot fall." *Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268, 278 (2d Cir. 2009) (internal quotation marks omitted). Instead, courts are required to interpret the NYCHRL broadly, "regardless of whether federal . . . civil and human rights laws," including those similarly worded, "have been so construed." *Id.* (quoting N.Y.C. Local Law No. 85 § 7 (the "Restoration Act") (2005)); *see also Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 108–09 (2d Cir. 2013).

supervisor contacted her to fill out a report about the incident with the pilot and, on June 14, 2017, Leroy reached out to another supervisor to complain and "inform him fully of the pilot situation"; (6) the next day, Leroy was removed from a flight for a random drug test; (7) she was not using any drugs; (8) after taking the drug test, Leroy was suspended for 30 days and told, "if your drug test comes back negative then you will be taken off suspension"; (9) one week later, on June 22, 2017, a supervisor "informed her that she was wrongfully suspended," but Leroy still received a suspension letter from Delta on or about July 3, 2017; and (10) on July 20, 2017, less than 60 days after Leroy's discrimination complaints to management, Leroy was terminated. App'x at 18–20.

We have recognized that, under Title VII, we "imput[e] employer liability for harassment by non-employees according to the same standards for non-supervisory co-workers." *Summa v. Hofstra Univ.*, 708 F.3d 115, 124 (2d Cir. 2013). In particular, "the conduct of certain non-employees may be imputed to the employer where (1) the employer exercises a high degree of control over the behavior of the non-employee, and (2) the employer's own negligence permits or facilitates that non-employee's discrimination." *Menaker v. Hofstra Univ.*, 935 F.3d 20, 38–39 (2d Cir. 2019) (internal quotation marks omitted). Moreover, for a

3

plaintiff to prevail on a retaliation claim—the sole claim at issue in this case—"the plaintiff need not prove that [her] underlying complaint of discrimination had merit, but only that it was motivated by a good faith, reasonable belief that the underlying employment practice was unlawful." *Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 743 F.3d 11, 24 (2d Cir. 2014) (internal quotation marks and citations omitted).

Notwithstanding this precedent, as well as the requirement that the allegations must be accepted as true and construed most favorably to Leroy at the motion to dismiss stage, the majority nevertheless concludes that these facts do not state even a plausible retaliation claim under the NYCHRL.[2] The majority does not conclude that it is implausible that Delta had a retaliatory motive in terminating Leroy. Nor does the majority conclude that it is implausible that a Delta pilot has sufficient control of an aircraft to remove (or take some other

---

[2] Under the NYCHRL, the elements of a retaliation claim are: (1) an employee's participation "in a protected activity as that term is defined under the NYCHRL"; (2) the employer's awareness that the employee participated in the protected activity; (3) an adverse employment action—*i.e.*, that the "employer engaged in conduct which was reasonably likely to deter a person from engaging in that protected activity"; and (4) "a causal connection between the protected activity and the alleged retaliatory conduct." *Brightman v. Prison Health Serv., Inc.*, 108 A.D.3d 739, 740 (2d Dep't 2013); *see Mihalik*, 715 F.3d at 112 ("[T]o prevail on a retaliation claim under the NYCHRL, the plaintiff must show that she took an action opposing her employer's discrimination, and that, as a result, the employer engaged in conduct that was reasonably likely to deter a person from engaging in such action." (internal citations omitted)).

4

remedial action against) a passenger engaging in racial harassment of a Delta crew member.[3] Instead, the majority holds that "[t]he facts as alleged in Leroy's complaint do not demonstrate that a reasonable similarly situated person would have a good-faith, reasonable belief that Delta was engaged in an unlawful employment practice." *Ante*, at 13. The majority reaches this decision, in part, because it does not view the "single comment" made by the passenger here as "ris[ing] to the level of the sort of extraordinarily severe and most egregious conduct that could, in a single incident, create a hostile work environment." *Ante*, at 10–11 (internal quotation marks omitted). Moreover, the majority finds that "[t]he complaint's description of [the pilot's] response to the passenger's comment does not amount to a plausible allegation that Delta permitted or facilitated that comment." *Ante*, at 11.

As a threshold matter, although we have explained that "even a single comment may be actionable in the proper context" under the NYCHRL, *Mihalik*, 715 F.3d at 113, it is important to note that Leroy is not asserting that the single racist comment by the passenger resulted in a hostile work environment. Instead,

---

[3] Indeed, at oral argument, counsel for Delta acknowledged that "the [pilot] is literally the captain of the ship and . . . has control." Oral Arg. Audio at 24:00–24:09; *see also* Oral Arg. Audio at 28:17–28:27 ("The pilot does have control over the flight . . . .").

5

the complaint solely asserts retaliation under the NYCHRL, including vicarious liability against Delta for the actions of its supervisors. Section 8–107(7) of the NYCHRL prohibits employers from "retaliat[ing] or discriminat[ing] in any manner against any person because such person has . . . opposed any practice forbidden under this chapter." N.Y.C. Admin. Code § 8–107(7). Thus, even assuming that the passenger's comment and/or the pilot's response to it do not rise to the level of a hostile work environment, the critical question here is whether it is plausible that Leroy had a good faith, reasonable belief that she was opposing an unlawful employment practice by Delta under the NYCHRL. Although the majority concludes otherwise, the answer to that question is undoubtedly yes.

As noted above, if the employer has a high degree of control over the behavior of the non-employee and negligently permits the non-employee's racial harassment, that is an unlawful employment practice under *Summa*.[4] 708 F.3d at

---

[4] Delta contends that district court cases have interpreted *Summa* "to require the defendant to have some knowledge of the non-employee's prior offending behavior in order for liability to attach to the employer." Appellee's Br. at 21 (citing cases). The majority adopts this argument and cites to a district court case for the proposition that "[g]enerally, an employer is not liable for failing to prevent an act of harassment by a first-time customer." *Ante*, at 11 (quoting *Swiderski v. Urb. Outfitters, Inc.*, No. 14-CV-6307, 2017 WL 6502221, at *9 (S.D.N.Y. Dec. 18, 2017)). That, however, was not the nature of Leroy's complaint to Delta. In other words, the unlawful discriminatory practice of which Leroy complained here was not focused on the failure to prevent the racial harassment by the passenger, but, rather, focused on the pilot and Delta management's failure to address the passenger's harassment after it had already taken place, as well as on the negative treatment Leroy received after the pilot was notified of the passenger's harassment.

124. It is certainly plausible that Leroy had a good faith, reasonable belief that the pilot had the ability to remove the passenger allegedly racially harassing her prior to take-off or, alternatively, to take some other appropriate remedial action. It is also entirely plausible that Leroy had a good faith, reasonable belief that, when the pilot did not exercise that control over the racially harassing passenger but rather removed the employee from the flight, the pilot had engaged in an unlawful employment practice and thus, when complaining about the pilot's response to the racial harassment by the passenger, Leroy was "oppos[ing] a[] practice forbidden" by the NYCHRL.[5] N.Y.C. Admin. Code § 8–107(7).

---

Thus, if an employer, when notified of racial harassment by a customer, fails to take corrective action and adequately address it, a plaintiff may be able to show (or, at least have a good faith, reasonable belief) under *Summa* that the employer's "own negligence permits or facilitates that non-employee's discrimination." *Menaker*, 935 F.3d at 39 (internal quotation marks omitted). Indeed, *Swiderski* itself recognized this potential avenue of liability. *See Swiderski*, 2017 WL 6502221, at *8 ("Here, a genuine factual dispute exists as to whether Defendant took appropriate corrective action to address each incident of customer harassment once it had notice of the problem."); *see also E.E.O.C. v. Love's Travel Stops & Country Stores, Inc.*, 677 F. Supp. 2d 1176, 1183 (D. Ariz. 2009) ("Defendant's liability does not turn on whether it knew of the harassment before or after it occurred, but on whether it took adequate remedial action once it was given notice that its female cashiers were being regularly sexually harassed by customers.").

[5] To the extent the majority suggests that Leroy alleged only for the first time on appeal that the pilot's response was part of her claim of an unlawful discrimination practice, *see ante*, at 11, that suggestion is contrary to the allegations in the complaint. For example, the complaint specifically alleges that "[o]n or around May 20, 2017, Plaintiff's then supervisor John Marsh contacted Plaintiff to fill out a FACTS report *regarding the incident with the [p]ilot*." App'x at 19 (emphasis added). The complaint further alleges that, "[o]n or around June 14, 2017, Plaintiff reached out to another supervisor, David Gilmartin, and informed him fully of *the pilot situation*." App'x at 19 (emphasis added). Thus, it is clear from the pleading that the pilot's response was a focus of Leroy's complaints to management and part of the foundation of her retaliation claim.

7

With respect to the pilot's response to Leroy's complaint about the racist comment by the passenger, the majority suggests that "[t]he complaint does not indicate that [the pilot's] response . . . was insufficient" and that *Summa* does not necessarily require that the passenger be removed. *Ante*, at 12 ("[E]ven in *Summa* we did not require that the university immediately expel the offending players from the team."); *see also ante*, at 14 ("To the extent [Leroy] argues [the pilot] should have removed the passenger, such a remedy was not required in *Summa* . . . ."). I agree with the majority that removal of the passenger is not necessarily the sole appropriate remedy that may be available to an employer in this type of situation. However, the complaint alleges that the pilot had *no response* to the racial harassment by the passenger other than ordering that *the employee* be removed from the flight when she refused the pilot's order that she step on the bridge and continue talking to the passenger. Indeed, the complaint alleges that when the pilot called the Operations Control Center ("OCC") to get Leroy removed for disrespecting him and the OCC initially refused, the pilot told them, "either she goes, or I go." App'x at 18–19. At that point, Leroy was removed from the flight by the OCC.

8

Although *Summa* does not dictate a particular course of action by an employer in response to an allegation of harassment by a non-employee, it does require a *reasonable* response by the employer to harassment under the circumstances. *See* 708 F.3d at 124 ("In determining the appropriateness of an employer's response, we look to whether the response was immediate or timely and appropriate in light of the circumstances, particularly the level of control and legal responsibility the employer has with respect to" the behavior of the non-employee (internal quotation marks and alterations omitted)). In *Summa*, the hostile work environment claim involved a pattern of harassing behavior by student athletes on a college football team toward the female team manager, each occurrence of which "was dealt with quickly and in proportion to the level of seriousness of the [harassing] event," and, after a final incident, was promptly investigated and resulted in the removal of one of the student athletes from the team within 48 hours. *Id.* at 120–21, 125. Moreover, the university required that "the entire Athletics staff undergo sexual harassment training before the start of the next football season," and thus "took proactive steps to create a better environment for all employees in the future." *Id.* at 125. In contrast, according to the complaint in this case, the pilot had no response to the racial harassment by

9

the passenger other than to remove Leroy from the flight after she refused to step off the plane to talk to the passenger further, and Delta management's only response when notified by Leroy of the harassment and the pilot's actions was to suspend and then terminate her.[6]

The majority nevertheless concludes that such a response, as alleged, is sufficient as a matter of law for the employer to have adequately addressed the alleged non-employee harassment and avoid liability under *Summa*. *See ante*, at 11–12. Moreover, because Leroy brings a retaliation claim, the majority could not end its analysis there. It further concluded that Leroy could not plausibly have possessed even a reasonable belief that the harassing racial comment and/or the pilot's response to the comment was unlawful discrimination under *Summa*, a belief that is necessary for her complaints to constitute protected activity for purposes of a retaliation claim. *Ante*, at 13–15. I disagree and would conclude that, under both the Title VII standard and under the broader NYCHRL standard discussed below, Leroy has plausibly alleged that she had a reasonable belief that,

---

[6] As the majority recognizes, the complaint also notes that Leroy received a letter from a passenger complimenting her for her composure during the incident with the pilot, and that Leroy then "received an acknowledgment letter from Delta along with award points for getting a compliment letter from a valued passenger." App'x at 19.

in reporting the passenger's racist comment and the pilot's response to management, she was opposing a discriminatory practice.

In essence, the majority creates a rule that if a single harassing comment by a co-worker (or, in this case, a non-employee) in the workplace does not rise to the level of a hostile work environment, then an employee's complaint about that comment is unprotected by the antiretaliation laws of Title VII or the NYCHRL because any belief by the employee that such a comment was a discriminatory practice would be unreasonable. *See ante*, at 10–11 ("That comment [by the passenger] does not rise to the level of the sort of extraordinarily severe and most egregious conduct that could, in a single incident, create a hostile work environment." (internal quotation marks omitted)); *ante*, at 13 (holding that no "reasonable similarly situated person would have a good faith, reasonable belief that Delta . . . engaged in an unlawful employment practice" for purposes of a retaliation claim because "[a]s noted above, the passenger's comment was not an employment practice, so it falls outside the scope of the NYCHRL"). In other words, under the majority's analysis, if an employee complained to an employer about racial harassment by a co-worker or non-employee in the workplace too soon, the employer could retaliate against the employee for such a complaint with

11

impunity. Thus, even if, hypothetically, a Delta supervisor explicitly told Leroy that she was being terminated because of her complaints about the passenger and/or the pilot's response, the majority's analysis would still require dismissal of Leroy's retaliation claim as implausible.

The majority's approach is simply incompatible with the Supreme Court's dictate that Title VII's antiretaliation provision be interpreted broadly:

> Title VII depends for its enforcement upon the cooperation of employees who are willing to file complaints and act as witnesses. Plainly, effective enforcement could thus only be expected if employees felt free to approach officials with their grievances. Interpreting the antiretaliation provision to provide broad protection from retaliation helps ensure the cooperation upon which accomplishment of [Title VII's] primary objective depends.

*Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67 (2006) (internal quotation marks and citation omitted). We have similarly noted that "it is appropriate to construe Title VII's prohibition on retaliation generously, and we do not require a sophisticated understanding on the part of a plaintiff of this relatively nuanced area of law." *Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C.*, 716 F.3d 10, 17 (2d Cir. 2013).[7]

---

[7] To the extent that the majority attempts to rely on the dismissal of the retaliation claim in *Kelly* to support its position, the facts in *Kelly* are inapposite to the instant case. In *Kelly*, the plaintiff alleged that she was retaliated against for complaining about her brother's affair with a worker in their family-owned business, but "[s]he made no complaints that suggested a belief that she

12

In *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264 (4th Cir. 2015), the Fourth

Circuit, sitting *en banc*, addressed this precise issue and held that, under Title VII,

"an employee is protected from retaliation when she opposes a hostile work

environment that, although not fully formed, is in progress." *Id.* at 282. More

specifically, the Fourth Circuit articulated the following standard for assessing a

retaliation claim in this context:

> [U]nder the standard that we adopt today with guidance from the Supreme Court, an employee is protected from retaliation for opposing an isolated incident of harassment when she reasonably believes that a hostile work environment is in progress, with no requirement for additional evidence that a plan is in motion to create such an environment or that such an environment is likely to occur. The employee will have a reasonable belief that a hostile environment is occurring if the isolated incident is physically threatening or humiliating.

*Id.* at 284.

---

was being discriminated against on the basis of any trait, protected or otherwise." 716 F.3d at 17. Here, in contrast, Leroy clearly made a complaint of harassment based on her race. The majority's reliance on *Wimmer v. Suffolk County Police Department*, 176 F.3d 125 (2d Cir. 1999), is similarly misplaced. In *Wimmer*, we held that a complaint by a police officer that fellow members of the police department had acted in a discriminatory manner towards the *public* was not a protected activity, as there was "no claim that any of this [alleged discriminatory] activity was directed at [the plaintiff] or any of his co-employees." *Id.* at 134–35. Thus, we concluded "[the plaintiff] could not have reasonably believed that he was opposing an employment practice because the evidence does not address racial discrimination in an employment practice," and, therefore, there was no cognizable retaliation claim under Title VII. *Id.* at 135–36. Here, unlike in *Wimmer*, Leroy was complaining about racial harassment *against her* in the workplace.

In reaching this decision, the Fourth Circuit addressed the problematic nature of the contrary holding urged by the dissent in that case (which largely mirrors the holding by the majority here). In particular, the Fourth Circuit explained:

> [W]e are perplexed and dismayed by the dissent's assertions that, on the one hand, '[the plaintiff] had every right to be offended by [the co-worker's] use of a racial epithet and acted reasonably and responsibly in reporting the incident,' and that, on the other hand, [the plaintiff] spoke up too soon and thereby deprived herself of protection from retaliation. As the dissent would have it, although reporting [the co-worker's] slur was a sensible thing to do, [the plaintiff] should have waited for additional harassment to occur—but not so much harassment that the [employer] could avoid vicarious liability because of a lack of timely notice.
> . . .
> Contrary to the dissent, we seek to promote the hope and expectation—ingrained in our civil rights laws and the Supreme Court decisions interpreting them—that employees will report harassment early, so that their employers can stop it before it rises to the level of a hostile environment. Employers are powerless in that regard only if they are unaware that harassment is occurring. But employees will understandably be wary of reporting abuse for fear of retribution. Under today's decision, employees who reasonably perceive an incident to be physically threatening or humiliating do not have to wait for further harassment before they can seek help from their employers without exposing themselves to retaliation.

*Id.* at 288 (internal citation omitted).

I agree with the Fourth Circuit's reasoning and its articulated standard for examining isolated incidents under Title VII for purposes of a retaliation claim. To

14

be sure, not every offensive utterance in the workplace can give rise to a reasonable belief by an employee that he or she has been subject to unlawful discrimination and thus provide a foundation for retaliation claim. For example, in *Clark County School District v. Breeden*, 532 U.S. 268 (2001), a plaintiff attempted to bring a retaliation claim based upon her complaint about a single sexist comment in a job applicant's file that plaintiff was required to review as part of her job and plaintiff "conceded that it did not bother or upset her to read the statement in the file." *Id.* at 270–71 (internal quotation marks omitted). Under such circumstances, the Supreme Court concluded that the situation was "at worst an 'isolated inciden[t]' that cannot remotely be considered 'extremely serious,' as our cases require." *Id.* at 271 (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)). However, consistent with *Breeden* and *Faragher* (as well as with the need to interpret the antiretaliation provision to provide broad protection as articulated in *Burlington*), the Fourth Circuit correctly concluded that an isolated incident that is physically threatening or humiliating *can* be sufficiently serious to provide a reasonable belief that a hostile work environment is in progress and, thus, support a retaliation claim. *Boyer-Liberto*, 786 F.3d at 284. Applying the Fourth Circuit's standard here, Leroy has alleged a reasonable belief that the racial insult by the passenger, as well

15

as the subsequent removal of Leroy from the plane when she brought the harassment to the pilot's attention, were humiliating, such that her complaint about that conduct provides a plausible basis for a retaliation claim.

Even if the majority believes that this reading of Title VII is too broad, that conclusion would be insufficient to likewise find that the majority's interpretation should be the same under the broader standards of liability for employers under the NYCHRL. Indeed, in the Local Civil Rights Restoration Act of 2005, N.Y.C. Local Law No. 85 (the "Restoration Act"), the City Council sought "to clarify the scope of New York City's Human Rights Law," which the Council determined "has been construed too narrowly to ensure protection of the civil rights of all persons covered by the law." *Id.* § 1 (2005).

As part of the Council's efforts to broaden the scope of the NYCHRL, the Restoration Act amended Section 8-130 of the Administrative Code to state:

> The provisions of this [chapter] title [*i.e.*, the NYCHRL] shall be construed liberally for the accomplishment of the uniquely broad and remedial purposes thereof, regardless of whether federal or New York State civil and human rights laws, including those laws with provisions comparably-worded to provisions of this title[,] have been so construed.

*Id.* § 7; *see also Loeffler*, 582 F.3d at 278 ("There is now a one-way ratchet: 'Interpretations of New York state or federal statutes with similar wording may be

16

used to aid in interpretation of New York City Human Rights Law, viewing similarly worded provisions of federal and state civil rights laws as a *floor* below which the City's Human Rights law cannot fall.'" (quoting Restoration Act § 1 (emphasis added))). Pursuant to this statutory mandate, the New York Court of Appeals has held that courts "must construe [the antiretaliation provision codified in] Administrative Code § 8-107(7), like other provisions of the City's Human Rights Law, broadly in favor of discrimination plaintiffs, to the extent that such a construction is reasonably possible." *Albunio v. City of New York*, 16 N.Y.3d 472, 477–78 (2011). Therefore, we have emphasized that "[p]ursuant to these revisions, courts must analyze NYCHRL claims separately and independently from any federal and state law claims." *Mihalik*, 715 F.3d at 109.

As it relates to retaliation claims, consistent with these rules of construction, "[t]he New York Court of Appeals has held that 'oppos[ing] any practice' can include situations where a person, *before* the retaliatory conduct occurred, merely 'made clear her disapproval of [the defendant's] discrimination by communicating to [him], in substance, that she thought [his] treatment of [the victim] was wrong.'" *Id*. at 112 (quoting *Albunio*, 16 N.Y.3d at 479 (emphasis added)).

17

Moreover, with respect to hostile work environment claims, New York courts have discarded the federal "severe and pervasive" requirement and, instead, have utilized "a rule by which liability is normally determined simply by the existence of differential treatment." *Williams v. N.Y.C. Hous. Auth.*, 61 A.D.3d 62, 76 (1st Dep't 2009). In other words, to prevail on a discrimination claim under the NYCHRL, a plaintiff need only demonstrate "by a preponderance of the evidence that she has been treated less well than other employees because of her [protected characteristic]." *Id*. at 78; *accord Nelson v. HSBC Bank USA*, 87 A.D.3d 995, 999–1000 (2d Dep't 2011). For example, "one can easily imagine a single comment that objectifies women being made in circumstances where that comment would, for example, signal views about the role of women in the workplace and be actionable." *Williams*, 61 A.D.3d at 80 n.30. As we have recognized, "[u]nder this standard, the conduct's severity and pervasiveness are relevant only to the issue of damages." *Mihalik*, 715 F.3d at 110. Moreover, New York courts have noted that although "the broader purposes of the City HRL do not connote an intention that the law operate as a general civility code," avoiding such a result is best accomplished not by imposing a more restrictive standard, but instead "by recognizing an affirmative defense whereby defendants can still avoid

18

liability if they prove that the conduct complained of consists of nothing more than what a reasonable victim of discrimination would consider petty slights and trivial inconveniences." *Williams*, 61 A.D.3d at 79–80 (internal quotation marks omitted).

For example, in *La Porta v. Alacra, Inc.*, 142 A.D.3d 851 (1st Dep't 2016), the plaintiff alleged that a co-worker made a sexist comment on social media regarding her breasts and, when she reported the remark to management, her managers isolated her. *Id.* at 852. The First Department found, *inter alia*, that the allegations were sufficient to state a retaliation claim under the NYCHRL. *Id.* at 853. In particular, the court emphasized that "[a] plaintiff need not establish an underlying HRL violation in order to prevail on a retaliation claim, and, based on her allegations, it can be readily inferred that she had a good faith, reasonable belief that the underlying challenged actions . . . violated the law." *Id.* (internal quotation marks and citations omitted). Although the instant case involves a third party, rather than a co-worker, if an employer fails to address the harassing conduct by the third party over whom the employer has a high degree of control, that employer would be liable and, at a minimum, such a failure could plausibly provide a sufficient basis for a good faith, reasonable belief that the employer's action (or lack thereof) violated the NYCHRL.

In sum, given these broad standards of employer liability under the NYCHRL, it is plausible that, when Leroy complained to Delta management about her removal from the flight by the pilot after alerting him about a passenger's racist comment to her, she was "oppos[ing] a[] practice forbidden" by the NYCHRL.[8] Moreover, if Leroy's allegations are proven to be true, Delta would be vicariously liable under the NYCHRL for the retaliatory actions of the pilot and other Delta supervisors. *See* N.Y.C. Admin. Code § 8-107(13)(b). Thus, Leroy's allegations state a plausible claim for retaliation (including for vicarious liability against Delta) that preclude dismissal at this juncture. Therefore, I would reverse the district court's dismissal of Leroy's retaliation and vicarious liability claim under the NYCHRL. Accordingly, I respectfully dissent.

---

[8] Other than the "protected activity" element, the only other element challenged by Delta in its motion to dismiss was causation, which was not reached by the district court. To the extent that Delta reasserts this argument on appeal, the allegations in the complaint—including that Leroy was terminated within approximately 60 days of complaining to management, and the alleged admission by a supervisor that Leroy was wrongly suspended—are more than sufficient under our precedent to survive a motion to dismiss on the causation issue. *See, e.g.*, *Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 769 (2d Cir. 1998) (following precedent that causation "can be established indirectly by showing that the protected activity was closely followed in time by the adverse action" and concluding that two months between the protected activity and the alleged retaliation was sufficient to demonstrate causation (internal quotation marks and citation omitted)), *abrogated on other grounds by Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 122 (2002).