## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

### SUMMARY ORDER

*Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this court's Local Rule 32.1.1. When citing a summary order in a document filed with this court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.*

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 21st day of October, two thousand twenty-two.

PRESENT:    John M. Walker Jr.,
            Joseph F. Bianco,
            Steven J. Menashi,
                    *Circuit Judges.*

_____

CLARA LEROY,

       *Plaintiff-Appellant*,

    v.                                  No. 21-267-cv

DELTA AIR LINES,

       *Defendant-Appellee*.

_____

| *For Plaintiff-Appellant*: | ANTONIA KOUSOULAS, Kousoulas & Associates, New York, NY, *for Plaintiff-Appellant*. |
|---|---|
| *For Defendant-Appellee*: | IRA G. ROSENSTEIN (Michael F. Fleming, *on the brief*), Morgan, Lewis & Bockius LLP, New York, NY, *for Defendant-Appellee*. |

Appeal from a judgment of the United States District Court the Eastern District of New York.

Upon due consideration, it is hereby **ORDERED**, **ADJUDGED**, and **DECREED** that the judgment of the district court is **AFFIRMED**.[1]

Clara Leroy appeals the dismissal of her complaint under the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 to 8-134 ("NYCHRL"), against Delta Air Lines ("Delta"). Her complaint alleges that, while working as a flight attendant for Delta, she was subjected to drug testing, wrongfully suspended, and ultimately fired within two months of her reporting a passenger's racist remark and the pilot's response to that remark. Those actions, according to Leroy's complaint, constituted impermissible retaliation on the part of Delta. The district court dismissed her complaint, holding that Leroy failed to state a claim for relief.

We agree. The NYCHRL prohibits retaliation for "opposing [the] employer's discrimination." *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 112 (2d Cir. 2013). To succeed on a retaliation claim, the plaintiff must at least have a good-faith, reasonable belief that she was opposing an unlawful employment practice. *See Reed v. A.W. Lawrence & Co.*, 95 F.3d 1170, 1178 (2d Cir. 1996). On the facts as alleged, Leroy could not have reasonably and in good faith believed that the passenger's comment or the pilot's conduct was an unlawful employment practice.

---

[1] Judge Bianco writes separately in dissent.

2

We therefore affirm the district court's judgment dismissing her claims. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

## I

"We review a district court's grant of a motion to dismiss *de novo*, accepting as true all factual claims in the complaint and drawing all reasonable inferences in the plaintiff's favor." *Henry v. County of Nassau*, 6 F.4th 324, 328 (2d Cir. 2021) (internal quotation marks omitted).

## A

Leroy is an African American woman who began working as a flight attendant for Delta in October 2000. On May 18, 2017, Leroy was assigned to a Delta flight. Before the plane had left the gate, she heard "a disgruntled passenger who was racist" call her a "black bitch." App'x 18. She complained about the incident to the pilot, Captain Carns, who "demanded" that Leroy "step out on the jet bridge with the passenger." *Id.* Leroy refused, claiming "that per FAA regulations she could not step off the airplane" and that she did not want to converse with the passenger. *Id.*

Carns responded to Leroy's refusal by contacting the Operations Control Center ("OCC") "to get [Leroy] removed off the flight for disrespecting him and his command." *Id.* The OCC initially refused, but after Carns's ultimatum that "either she goes, or I go," it removed Leroy from the flight. *Id.* at 19. Two days later, Leroy's supervisor, John Marsh, instructed her to fill out a Flight Attendant Comment Tracking System (FACTS) report about the incident with Carns.

The FACTS report that Leroy filed provides factual details that are absent from her complaint.[2] For example, when the pilot asked Leroy "if [she] wanted to resolve

---

[2] The parties dispute whether the FACTS report was incorporated into the complaint such that we may consider it on a motion to dismiss. "A complaint is deemed to include … any

the situation," she informed him that "the situation was resolved." App'x 38. Also, a departure delay was announced prior to the passenger's racial slur. Thereafter, after Carns intervened, Leroy spoke to the OCC "a couple of times" while on the plane and informed the OCC that she "was very ok" and "serving [her] first class [passengers] laughing and trying to smooth over the ATC delay with them." *Id.* at 39. Finally, in the FACTS report, Leroy recounts that it was the passenger who first complained to the pilot.[3]

On June 14, Leroy reached out to another of her supervisors, David Gilmartin, and "informed him fully of the pilot situation." App'x 19. The next day, June 15, she was removed from a working trip for a random drug test. Because Leroy did not

---

statements or documents incorporated in it by reference" and even "[w]here a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, thereby rendering the document integral to the complaint." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230 (2d Cir. 2016) (internal quotation marks omitted). Leroy references the FACTS report in her complaint, admits that she prepared the report, and does not contest its accuracy or authenticity. The fact that her "supervisor John Marsh contacted [Leroy] to fill out a FACTS report regarding the incident with the Pilot Carns" is central to her allegations because the FACTS report was an opportunity for her to detail the incident. App'x 19 (Compl. ¶23). We conclude that the FACTS report is incorporated into Leroy's complaint. *See Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004) (concluding that documents that the "complaint explicitly refers to and relies upon" and that were "integral to [the plaintiff's] ability to pursue" his claim were incorporated into the complaint).

[3] It is unclear whether this account conflicts with Leroy's complaint, which more generally alleges that she "complained to Pilot Carns about a disgruntled passenger" "[p]rior to takeoff" but does not specify whether she or the passenger complained first. App'x 18. In all events, to the extent there are inconsistencies between Leroy's complaint and the FACTS report, we credit Leroy's more detailed account in the FACTS report. *See L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011) (observing that when reviewing a judgment on the pleadings, courts assume facts alleged are true "unless contradicted by more specific allegations or documentary evidence"); *Blue Tree Hotels Inv. (Canada) v. Starwood Hotels & Resorts Worldwide, Inc.*, 369 F.3d 212, 222 (2d Cir. 2004) (rejecting a complaint's allegations that were "belied by the letters attached" to the complaint).

produce enough urine for the test, she submitted to another drug test that same day. During the second drug test, a flight attendant supervisor and the person administering the test both asked Leroy "several questions about her past drug use," and Leroy responded that "she was not taking any drugs." *Id.* Leroy was then suspended for thirty days. The flight attendant supervisor told Leroy that "if your drug test comes back negative then you will be taken off suspension." *Id.* at 20. Leroy alleges that she "knew that she would pass because … there were no drugs in her system." *Id.* A week later, on June 22, Gilmartin "informed her that she was wrongfully suspended." *Id.* Even so, on July 3 Leroy received a suspension letter from Delta stating that Delta took the action "for refusing to appear for a required DOT substance test." App'x 34. Seventeen days after that, she was fired.

**B**

On December 31, 2019, Leroy filed suit against Delta in the New York Supreme Court, Kings County. Her complaint asserted claims for retaliation and vicarious liability under the NYCHRL. In the complaint, Leroy alleges, first, that Delta "engaged in an unlawful discriminatory practice in violation of [NYCHRL § 8-107(1)] by terminating Plaintiff after her complaint of discrimination" and, second, that Delta is liable under NYCHRL § 8-107(13) for its employees' "discriminatory conduct," which includes the drug tests and the wrongful suspension. App'x 21.

On February 25, 2020, Delta removed the case to the U.S. District Court for the Eastern District of New York. Delta then moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6). Delta argued that Leroy's account of the incident on the airplane contradicted the FACTS report and, in any event, her account did not show that Delta itself discriminated against Leroy. Because of that deficiency, Delta argued, Leroy's claims of retaliation and vicarious liability must fail.

On January 11, 2021, the district court granted Delta's motion to dismiss. *Leroy v. Delta Airlines, Inc.*, No. 20-CV-1033, 2021 WL 84278, at *1 (E.D.N.Y. Jan. 11, 2021). The district court concluded that Leroy "fails to state a claim for retaliation against

Delta" because she does not allege facts showing "that she complained about discrimination by Delta" apart from asserting this "legal conclusion." *Id.* at *2. The district court also held that, because "Leroy has not alleged a violation of the NYCHRL, there is no basis for employer liability." *Id.* at *3.

Leroy timely appealed.

## II

"We review *de novo* the grant of a motion to dismiss for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6)." *Harris v. Mills*, 572 F.3d 66, 71 (2d Cir. 2009). Leroy's complaint asserts claims only under the NYCHRL, which provides protection from discrimination to inhabitants of, and people who work in, New York City. *Hoffman v. Parade Publ'ns*, 15 N.Y.3d 285, 289-90 (2010). The NYCHRL provides that it should "be construed liberally for the accomplishment of the uniquely broad and remedial purposes thereof." *Mihalik*, 715 F.3d at 109 (quoting N.Y.C. Admin. Code § 8-130). But its scope is not unlimited. "[T]he NYCHRL is not a general civility code," and "a defendant is not liable if the plaintiff fails to prove the conduct is caused at least in part by discriminatory or retaliatory motives." *Id.* at 113. The NYCHRL may be construed broadly but "only to the extent that such a construction is reasonably possible." *Makinen v. City of New York*, 857 F.3d 491, 495 (2d Cir. 2017) (internal quotation marks omitted).

On appeal, Leroy argues that the district court erred when it dismissed her claims for retaliation and vicarious liability. We address each claim in turn.

## A

The NYCHRL provides that "[i]t shall be an unlawful discriminatory practice … to retaliate or discriminate in any manner against any person because such person has … opposed any practice forbidden under this chapter." N.Y.C. Admin. Code § 8-107(7). "[T]o prevail on a retaliation claim under the NYCHRL, the plaintiff must show that she took an action opposing her employer's discrimination, and that, as a result, the employer engaged in conduct that was reasonably likely to deter a person

6

from engaging in such action." *Mihalik*, 715 F.3d at 112 (citation omitted).

To survive a motion to dismiss, a plaintiff claiming retaliation under the NYCHRL must allege that she engaged in protected activity. *See Albunio v. City of New York*, 16 N.Y.3d 472, 479 (2011) ("Since [the plaintiff's NYCHRL] claim is limited to retaliation, she can prevail only if she shows that she 'opposed' discrimination."). The plaintiff "need not prove that her underlying complaint of discrimination had merit but only that it was motivated by a good faith, reasonable belief that the underlying employment practice was unlawful." *Kwan v. Andalex Grp., LLC*, 737 F.3d 834, 843 (2d Cir. 2013) (internal quotation marks and citation omitted). If the underlying employment practice was unlawful, however, that establishes the reasonableness of her belief. *Gregory v. Daly*, 243 F.3d 687, 701 (2d Cir. 2001) (noting that a plaintiff "could reasonably have believed that [the defendant]'s conduct violated Title VII" because "the facts she alleges support a hostile work environment claim of sex discrimination"). We therefore consider whether the allegations support a claim of discrimination on the part of Delta before considering whether Leroy otherwise had a good-faith, reasonable belief that the conduct she opposed was an unlawful employment practice.

**1**

Leroy argues that she opposed two instances of racial discrimination by Delta. First, she points to the passenger's remark and argues that Delta "may be held liable for the discriminatory comment of the passenger." Appellant's Br. 7. Second, Leroy argues that "Carns's response to [her] complaint" about the remark—his demand that she step onto the jet bridge with the passenger and his subsequent demand that Leroy be taken off the flight—"was itself an unlawful discriminatory practice under the NYCHRL." *Id.* at 11. We disagree with both arguments.

Leroy's claim that Delta is liable for the passenger's comment sounds in vicarious liability. The NYCHRL imposes liability on an employer for actions of an employee or agent in three circumstances:

7

(1) where the offending employee "exercised managerial or supervisory responsibility" …; (2) where the employer knew of the offending employee's unlawful discriminatory conduct and acquiesced in it or failed to take "immediate and appropriate corrective action"; and (3) where the employer "should have known" of the offending employee's unlawful discriminatory conduct yet "failed to exercise reasonable diligence to prevent it."

*Zakrzewska v. New School*, 14 N.Y.3d 469, 479 (2010) (alteration omitted) (quoting N.Y.C. Admin. Code § 8-107(13)(b)). In this case the passenger was, of course, neither an employee nor an agent of Delta. In *Summa v. Hofstra University*, however, we held in the Title VII context that we "imput[e] employer liability for harassment by non-employees according to the same standards for non-supervisory co-workers." 708 F.3d 115, 124 (2d Cir. 2013).[4] We recently interpreted those standards to provide that "the conduct of certain non-employees may be imputed to the employer where (1) the employer exercises a high degree of control over the behavior of the non-employee, and (2) the employer's own negligence permits or facilitates that non-employee's discrimination." *Menaker v. Hofstra Univ.*, 935 F.3d 20, 39 (2d Cir. 2019) (internal quotation marks omitted). "In determining the appropriateness of an employer's response, we look to whether the response was immediate or timely and appropriate in light of the circumstances, particularly the level of control and legal responsibility the employer has with respect to" the non-employee's behavior. *Summa*, 708 F.3d at 124 (internal quotation marks and alterations omitted).

In *Summa*, the plaintiff brought claims under Title VII and the New York State

---

[4] No decision of the New York Court of Appeals has held an employer liable under the NYCHRL for the conduct of a non-employee, and the text of the NYCHRL does not appear to impose such liability. *See Makinen*, 857 F.3d at 495. But because the NYCHRL treats Title VII as "a floor below which the NYCHRL cannot fall," *Velazco v. Columbus Citizens Found.*, 778 F.3d 409, 410 (2d Cir. 2015) (alteration omitted) (quoting N.Y.C. Local L. No. 85, § 1), we assume here that it includes the liability we identified in *Summa*.

Human Rights Law alleging that the actions of the university's student football players created a hostile work environment. *Id.* at 123-24. Although "the University and the head football coach had a high degree of control over the behavior of its student football players," we held that Hofstra met its "remedial obligation to address and end the harassment" when it ejected the offending student within 48 hours of the plaintiff's complaint. *Id.* at 124. Thus, we affirmed the grant of summary judgment to Hofstra on the hostile work environment claim.

We need not consider whether Leroy has adequately alleged that Delta exercised a "high degree of control" over the passenger because she has failed to allege that Delta's "own negligence permit[ted] or facilitate[d]" the passenger's alleged discriminatory conduct. *Menaker*, 935 F.3d at 39 (internal quotation marks omitted). There is no allegation in the complaint that Delta "did not monitor the workplace, failed to respond to complaints, failed to provide a system for registering complaints, or effectively discouraged complaints from being filed" so as to show Delta's negligence in failing to prevent the passenger's comment. *Vance v. Ball State Univ.*, 570 U.S. 421, 449 (2013). Indeed, Supervisor Marsh instructed Leroy to fill out the FACTS report two days after the incident.

As to Pilot Carns's response to the passenger's comment, even when a non-employee's conduct is imputed to the employer, the employer is obliged only to "address and end the harassment." *Summa*, 708 F.3d at 124. According to Leroy's more-detailed allegations in the FACTS report, when the pilot asked Leroy "if [she] wanted to resolve the situation," she informed him that "the situation was resolved." App'x 38. While she was still on the plane, she told the OCC that she was "very ok." App'x 39. Crediting Leroy's own account of the incident, her complaint does not allege that Carns's response amounts to a discriminatory employment practice.

We conclude that Leroy has failed to allege facts to support a claim of racial discrimination under the NYCHRL.

That Leroy opposed conduct which did not in fact violate the NYCHRL does not end the matter. Even if a complaint is ultimately without merit, lodging the complaint is a protected activity so long as it was "motivated by a good faith, reasonable belief that the underlying employment practice was unlawful." *Kwan*, 737 F.3d at 843 (internal quotation marks omitted). "The reasonableness of the plaintiff's belief is to be assessed in light of the totality of the circumstances" and is "evaluated from the perspective of a reasonable similarly situated person." *Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C.*, 716 F.3d 10, 14-15, 17 (2d Cir. 2013).

That principle is very forgiving, but it does not transform every complaint into activity protected under the NYCHRL. In *Kelly*, this court observed that "[a] plaintiff's belief … is not reasonable simply because he or she complains of something that appears to be discrimination in some form." *Id.* at 15. We affirmed the dismissal of a Title VII retaliation claim because "nothing in [the plaintiff's] complaint … indicate[s] that her sex, in one way or another, played a substantial role in [her employer's] behavior." *Id.* (internal quotation marks omitted). In another Title VII case, this court held that a plaintiff "could not have reasonably believed that he was opposing an employment practice" when "the evidence does not address racial discrimination in an employment practice." *Wimmer v. Suffolk Cnty. Police Dep't*, 176 F.3d 125, 136 (2d Cir. 1999).

The facts here do not demonstrate that a reasonable similarly situated person would have a good-faith, reasonable belief that Delta was engaged in an unlawful employment practice. *See Kelly*, 716 F.3d at 17. The passenger's comment was not an employment practice, so it falls outside the scope of the NYCHRL. *See Cooper v. N.Y. State Dep't of Labor*, 819 F.3d 678, 681 (2d Cir. 2016) ("[A Title VII] plaintiff alleging unlawful retaliation may not recover unless he reasonably believed that the conduct he opposed ran afoul of one of [Title VII's] particular statutory proscriptions."). And Leroy's own account of the facts—both in her complaint and in the FACTS report—demonstrates that Delta's failure to take further remedial action was not

unreasonable. According to the FACTS report, the passenger—not Leroy—first reported the incident to the pilot. Leroy then informed the pilot that the incident was "already resolved," told the OCC that she was "very ok," and continued to serve the first-class passengers while "laughing and trying to smooth over the ATC delay with them." App'x 39. We agree with the district court that, in light of these specific facts, it would not be objectively reasonable to believe that Delta's conduct amounted to a discriminatory employment practice.

We need not decide whether Leroy's claim would survive if she plausibly alleged that the pilot responded to a complaint about a harassing comment with hostility or indifference. An employee may have a good-faith, reasonable belief that a supervisor's hostility or indifference to a complaint about a harassing comment was itself a discriminatory employment practice. Here, we affirm the dismissal of Leroy's retaliation claim under the NYCHRL only because the specific facts as alleged in her complaint support neither a claim of racial discrimination by Delta nor a good-faith, reasonable belief that she engaged in protected activity.

**B**

Leroy also appeals the district court's dismissal of her claim that Delta is vicariously liable for its employees' actions. In certain circumstances, the NYCHRL provides that "[a]n employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent." N.Y.C. Admin. Code § 8-107(13)(b). As noted above, however, Leroy's complaint does not present facts that support a plausible allegation of any "unlawful discriminatory practice." *Id.* We therefore affirm the district court's dismissal of this claim as well.

\*     \*     \*

We have considered Leroy's remaining arguments, which we conclude are without merit. For the foregoing reasons, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

Joseph F. Bianco, *Circuit Judge*, dissenting:

I would reverse the judgment of the district court because Leroy states a plausible claim for retaliation under the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 to 8-134 ("NYCHRL"). The Flight Attendant Comment Tracking System ("FACTS") report, upon which the majority relies to affirm the district court, was mentioned only in passing in the complaint, without any discussion of its contents, because Leroy was required to fill it out after the pilot removed her from the flight. Leroy does not quote or rely upon the report in any way, nor is it integral to her retaliation claim which was based upon her *oral* reports of discriminatory treatment. Indeed, although it dismissed her complaint, the district court noted that Leroy "does not allege . . . that she used the FACTS report she submitted about the incident to complain about discrimination by Delta." *Leroy v. Delta Airlines, Inc.*, No. 20-CV-1033(RRM)(PK), 2021 WL 84278, at *2 (E.D.N.Y. Jan. 11, 2021). Therefore, the FACTS report cannot be considered on a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016) (holding that document is not integral to complaint if "merely mention[ed]"); *see also Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004) (citing *Cosmas v. Hassett*, 886 F.2d 8, 13 (2d Cir. 1989)) ("Limited quotation from or reference to documents that may constitute relevant evidence in a case is not enough to incorporate those documents, wholesale, into the complaint.").

In any event, the FACTS report does not undermine the core allegations in the complaint that form the basis of Leroy's retaliation claim under the NYCHRL. In particular, the report states that a passenger directed a racial epithet at Leroy, and the pilot ordered her to resolve the situation with that passenger, which Leroy refused to do. Moreover, the complaint further alleges that, after being told to fill out the report by a supervisor following the incident, Leroy "reached out to another supervisor, David Gilmartin, and informed him fully of the pilot situation," App'x at 19, and she was terminated approximately one month later.

In short, the complaint alleges Leroy was terminated after complaining of an unlawful employment practice by Delta in response to a racial epithet by a passenger, and the FACTS report (even if it could be properly considered on a motion to dismiss) in no way renders these allegations of retaliation implausible.

Accordingly, I respectfully dissent.