25-1830-cv
*Brooks v. Bright Horizons*

**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

**SUMMARY ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 9th day of June, two thousand twenty-six.

Present:

> WILLIAM J. NARDINI,
> EUNICE C. LEE,
> BETH ROBINSON,
> > *Circuit Judges*.

---

AMANDA BROOKS,

> *Plaintiff-Appellant*,

> v.                                                          25-1830-cv

BRIGHT HORIZONS FAMILY SOLUTIONS, INC.,
BRIGHT HORIZONS FAMILY SOLUTIONS LLC,
BRIGHT HORIZONS CAPITAL CORPORATION,
BRIGHT HORIZONS CHILDRENS CENTERS LLC,
BRIGHT HORIZONS CHILDRENS CENTERS, INC.,
BRIGHT HORIZONS LLC,

> *Defendants-Appellees*.

---

For Plaintiff-Appellant:                 STEPHEN BERGSTEIN, Bergstein & Ullrich, New Paltz, NY.

For Defendants-Appellees:             ELI Z. FREEDBERG, Littler Mendelson P.C., New York, NY.

Appeal from a judgment of the United States District Court for the Southern District of New York (Paul A. Engelmayer, *District Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED IN PART** and **REVERSED IN PART**.

Plaintiff-Appellant Amanda Brooks appeals from a judgment of the United States District Court for the Southern District of New York, entered on June 26, 2025, dismissing her employment discrimination complaint against Defendants-Appellees Bright Horizons Family Solutions, Inc., Bright Horizons Family Solutions LLC, Bright Horizons Capital Corporation, Bright Horizons Children's Centers LLC, Bright Horizons Children's Centers Inc., and Bright Horizons LLC (collectively "Bright Horizons") for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). We assume the parties' familiarity with the case.

In her amended complaint, Brooks made the following allegations, which we assume to be true for the purposes of this appeal. *See Moreira v. Société Générale, S.A.*, 125 F.4th 371, 387 (2d Cir. 2025).[1] In 2017, Brooks began working at Bright Horizons, which offers day care services and early childhood education. Brooks had a stellar work history at Bright Horizons from 2017 until December 2020, when Bright Horizons appointed Robyn Carrone as the Regional Manager, making her Brooks' supervisor. Carrone subsequently treated Brooks, the only Black director under her supervision, with hostility. Carrone micromanaged Brooks, demanding that Brooks

---

[1] Unless otherwise indicated, when quoting cases, all internal quotation marks, alteration marks, emphases, footnotes, and citations are omitted.

copy Carrone on every email and invite Carrone to every staff meeting that Brooks held, even though no other director under Carrone's supervision was required to do the same.

Brooks was promoted to Executive Director for two of Bright Horizons' locations in April 2021. In this new role, Brooks began to supervise a director of one of those Bright Horizons locations. That director—an Asian-American woman—confided in Brooks that she felt Carrone was discriminating against her because of her race and setting her up for failure. Brooks reported the director's concerns to Carrone "several times between April 2021 and October 2021," but Carrone largely ignored these complaints. Joint App'x 65. Eventually, in October 2021, the director resigned and was replaced by a white woman.

Thereafter, in November and December of 2021, Brooks applied for a Regional Manager position at Bright Horizons. Brooks made it to the final round of interviews, but was ultimately not selected. A man who is not Black was hired over Brooks even though he did not have "any prior experience supervising, as was required on the job listing." *Id.* Carrone told Brooks that part of the reason she was not selected for the position was because "she needed more experience managing people who are 'not like [her].'" *Id.* at 66. When Brooks asked for clarification as to what the "not like her" comment meant, Carrone referenced Brooks' purported failure to manage the Asian-American director and another employee who is a non-Black Latina woman.

On February 24, 2022, Brooks had a meeting with a Division Vice President at Bright Horizons to express concerns about her compensation. Brooks reported to the Vice President that some of her direct reports, including a white woman, earned a higher salary than her despite holding a more junior position. Brooks also expressed her concerns about Carrone, telling the Vice President that she felt underappreciated and demeaned.

3

On March 6, 2022—less than two weeks after Brooks met with the Vice President—Carrone told Brooks that she was forbidden from returning to work, because an allegation had been made against her and an investigation was pending. Initially, Carrone would not tell Brooks what the allegation was, but Carrone eventually relayed that the investigation was related to a breach of Bright Horizons' COVID protocol. Notably, although the location from which this breach was alleged to have occurred was run by a white woman who ultimately made the decision that broke the COVID protocol, that director was not investigated or at all penalized for this incident. Brooks was placed on unpaid administrative leave, and on March 14, 2022, Bright Horizons fired Brooks. Bright Horizons ultimately hired a white woman to replace Brooks.

Brooks later brought this action against Bright Horizons. In her amended complaint, Brooks set forth claims for racial discrimination, gender discrimination, color discrimination, and retaliation under Title VII of the Civil Rights Act of 1964, codified at 42 U.S.C. § 2000e *et seq.*; 42 U.S.C. § 1981; and various New York State and City civil rights laws, including New York State Human Rights Law (N.Y. Exec. Law 290 *et seq.*) and New York City Human Rights Law (N.Y.C. Admin. Code 8-101 *et seq.*). Bright Horizons moved to dismiss the amended complaint for failure to state a claim under Rule 12(b)(6). The district court granted Bright Horizons' motion, dismissing all of Brooks' federal claims—either on the merits or as time-barred—and declining to exercise supplemental jurisdiction over her remaining state and local law claims. On appeal, Brooks challenges only the district court's dismissal of her race-based discrimination and retaliation claims under both Title VII and § 1981. We therefore deem all other claims abandoned.

"[W]e review *de novo* a district court's dismissal of a complaint pursuant to Rule 12(b)(6), construing the complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." *Moreira*, 125 F.4th at 387.

4

## I. Timeliness

We begin with the threshold question of whether any of Brooks' claims are barred by the applicable statutes of limitations. As relevant here, before pursuing her Title VII claim, Brooks was required to file an administrative charge claiming an unfair employment practice within 300 days of the alleged discriminatory act. *See* 42 U.S.C. § 2000e-5(e)(1) (setting forth 300-day deadline where claim is presented to state agency that can grant appropriate relief). Absent exceptions that are not relevant here, recovery for discriminatory acts more than 300 days before that filing is precluded. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 105 (2002). Here, Brooks filed her administrative charge on January 1, 2023, meaning that she can recover on Title VII claims only for acts of discrimination or retaliation that occurred no more than 300 days earlier—that is, after March 7, 2022. Because Brooks alleges that she was denied a promotion in December 2021, well before March 7, 2022, the district court correctly concluded that Brooks' Title VII race discrimination and retaliation claims based on the failure to promote her were untimely, and we affirm the district court's dismissal of those claims. However, because Brooks was not terminated until March 14, 2022, her Title VII race discrimination and retaliation claims premised on her termination were timely and we therefore address the merits of those claims.

By contrast, claims brought pursuant to § 1981 have a four-year limitations period. *Banks v. Gen. Motors, LLC*, 81 F.4th 242, 260 (2d Cir. 2023). The four-year limitations period for Brooks' § 1981 claims began on August 11, 2020, four years before August 11, 2024, when Brooks filed her initial complaint in federal court. Therefore, Brooks' § 1981 race discrimination and retaliation claims premised both on her termination (March 2022) and denial of a promotion (December 2021) are timely, and we proceed to consider them below.

5

## II. Race Discrimination Claims

Under Title VII, it is unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to h[er] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). "[F]or a discrimination claim to survive a motion to dismiss, absent direct evidence of discrimination, what must be plausibly supported by facts alleged in the complaint is that the plaintiff (1) is a member of a protected class, (2) was qualified, (3) suffered an adverse employment action, and (4) has at least minimal support for the proposition that the employer was motivated by discriminatory intent." *Buon v. Spindler*, 65 F.4th 64, 79 (2d Cir. 2023). Discrimination claims brought under § 1981 are generally analyzed under the same framework as Title VII claims. *Patterson v. Cnty. of Oneida, N.Y.*, 375 F.3d 206, 225 (2d Cir. 2004).

### a. Failure to Promote

The amended complaint plausibly alleges that Bright Horizons failed to promote Brooks because of her race. To demonstrate Bright Horizons' discriminatory intent with respect to her failure to obtain a promotion, Brooks alleges that she was not selected for promotion despite being qualified, whereas her employer instead promoted a person outside her protected group who lacked a qualification required by the job listing—namely, prior supervisory experience. These facts "give plausible support to a minimal inference of discriminatory motivation." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 84 (2d Cir. 2015); *see Buon*, 65 F.4th at 83 (plaintiff met her "minimal burden" at the motion to dismiss stage by alleging that she was qualified for positions she sought and those positions were filled by individuals outside her protected class who were less qualified). Additionally, the amended complaint plausibly sets forth that Carrone treated her other

6

supervisees who were not part of Brooks' protected racial group—but were otherwise similarly situated—more favorably. For example, while Carrone micromanaged Brooks, demanding that she be copied on every email Brooks sent and be invited to every staff meeting Brooks held, Carrone did not impose these same requirements on other non-Black directors. It is well-established that "the more favorable treatment of employees not in the protected group" helps give rise to an inference of discrimination. *Littlejohn v. City of New York*, 795 F.3d 297, 312 (2d Cir. 2015). Viewed in conjunction, these allegations suffice to present a plausible allegation of racial discrimination in the denial of a promotion.

### b. Termination

The amended complaint also plausibly alleges that Brooks was fired because of her race. Principally, Brooks emphasizes that following her termination, her position was filled by a white woman. As we have held, "[t]he fact that a plaintiff was replaced by someone outside the protected class will ordinarily suffice for the required inference of discrimination at the initial prima facie stage of the Title VII analysis, including at the pleading stage." *Id.* at 313. If that were not enough, Brooks also alleges that a white woman she supervised was the one who ultimately made the decision that violated Bright Horizons' COVID-19 protocol and led to Brooks' termination. Despite her role in this decision-making process, the white director was "neither investigated nor penalized in any way for her own decision," Joint App'x 69, suggesting "the more favorable treatment of employees not in the protected group," *Littlejohn*, 795 F.3d at 312. As explained above, these allegations are sufficient to survive a motion to dismiss.[2]

---

[2] The district court acknowledged our holding in *Littlejohn*, but relied on a subsequent summary order of this Court to conclude that we had "more recently cautioned that the succession of an employee by a person outside the protected class, standing alone, cannot give rise to a plausible inference of discrimination." Joint App'x at 102 (citing *Marcus v. Leviton Mfg. Co., Inc.* 661 F. App'x 29, 32 (2d Cir. 2016) ("Without more, the mere fact that an older

7

\*     \*     \*

Accordingly, we reverse the district court's dismissal of Brooks' Title VII and § 1981 racial discrimination claims based on her termination, as well as its dismissal of Brooks' § 1981 racial discrimination claim derived from Bright Horizons' failure to promote her.

## III.    Retaliation Claims

Title VII also makes it unlawful "for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). For a Title VII retaliation claim to survive a motion to dismiss, a "plaintiff must plausibly allege that: (1) defendants . . . took an adverse employment action . . . against him, (2) because he has opposed any unlawful employment practice," or in other words, engaged in a protected activity. *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 90 (2d Cir. 2015). Retaliation claims brought under § 1981 are analyzed under the same framework. *Hicks v. Baines*, 593 F.3d 159, 164 (2d Cir. 2010). Brooks alleges that Bright Horizons retaliated against her for engaging in two protected activities: (1) conveying to Carrone the reports of the Asian-American director who believed Carrone was biased against her on account of her race, and (2) reporting her own concerns about her compensation to the Vice President.

---

employee was replaced by a younger one does not plausibly indicate discriminatory motive.")). But *Marcus* did not—indeed could not—undermine what we held in *Littlejohn*. Procedurally, a summary order is nonbinding, and even a published opinion of a later panel cannot override the published opinion of an earlier panel. In any event, we discern no tension between our two decisions. In *Marcus*, we were addressing what we described as "skeletal pleading" in a complaint that alleged simply on "information and belief" that the plaintiff had been replaced by a younger employee, without any supporting facts—not even the purported age of the new employee. 661 F. App'x at 32-33. Brooks' amended complaint is far more detailed and alleges specifics about differential treatment that was accorded to her and a similarly situated employee of Bright Horizons.

Beginning with her complaints about her pay, Brooks has not sufficiently alleged that Bright Horizons knew she engaged in a protected activity. One of the requirements of a *prima facie* claim for retaliation is that the employer knew of the employee's protected activity. *Littlejohn*, 795 F.3d at 315–16. At the motion to dismiss stage, Brooks' allegations must give "plausible support" to that requirement. *Id.* This Court has held that "[a]lthough particular words such as 'discrimination' are certainly not required to put an employer on notice of a protected complaint, neither are they sufficient to do so if nothing in the substance of the complaint suggests that the complained-of activity is, in fact, unlawfully discriminatory." *Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C.*, 716 F.3d 10, 17 (2d Cir. 2013). Here, Brooks' complaint to the Vice President merely reported "that some of [Brooks'] direct reports—namely [an individual who is] a white woman—earned a higher salary than her despite being in a more junior position." Joint App'x 68. Notably missing was any complaint of racial discrimination, let alone a reference to race at all. Because nothing in the substance of Brooks' complaint to the Vice President suggested that her concerns about her compensation were actually complaints of unlawful discrimination, Brooks falls short of pleading that Bright Horizons was aware that she had engaged in a protected activity.

Next, neither party disputes that Brooks reporting the Asian-American director's complaints to Carrone was a protected activity. Instead, the parties disagree as to whether the amended complaint establishes a causal connection between this protected activity and Brooks being denied a promotion or being terminated. Such a causal connection can be established either "(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus

9

directed against the plaintiff by the defendant." *Littlejohn*, 795 F.3d at 319. Brooks relies primarily on indirect evidence, namely temporal proximity, to establish a causal connection between her reports to Carrone and her denial of a promotion and her termination. While temporal proximity can establish a causal connection, and there is no "bright line" rule that defines "the outer limits beyond which a temporal relationship is too attenuated to establish causation," *Vega*, 801 F.3d at 90, where a plaintiff points *only* to "mere temporal proximity," it must be "very close," *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001). Illustratively, our Court has previously held in the summary judgment context that a lapse of time longer than two months was insufficient to support an inference of causation. *See Hollander v. Am. Cyanamid Co.*, 895 F.2d 80, 85-86 (2d Cir. 1990) (concluding that a two-and-a-half month delay between the protected activity and adverse employment action was too attenuated). Here, there was at least a two-month gap between when Brooks alleges she last reported the director's complaints to Carrone, in October 2021, and when she was denied the promotion in December 2021, and a five-month delay between Brooks' last report to Carrone and her termination in March 2022. Without more, Brooks' communications of the director's complaints to Carrone were too remote for the timing of events alone to support the inference that Bright Horizons engaged in unlawful retaliation against Brooks.

Accordingly, the amended complaint falls short of pleading the necessary elements of a retaliation claim. We therefore affirm the district court's dismissal of Brooks' Title VII and § 1981 retaliation claims.

\*　　\*　　\*

For the foregoing reasons, the judgment of the district court is **AFFIRMED IN PART** and **REVERSED IN PART**.

FOR THE COURT:

Catherine O'Hagan Wolfe, Clerk